### In re SPANISH CAY CO., LIMITED, Debtor.

### Bankruptcy Nos. 91–32961–BKC–RAM, 91–33000–BKC–RAM.

United States Bankruptcy Court, S.D. Florida.

Nov. 30, 1993.

---

Paul Golis, Watterson, Hyland, Baird, Nichols & Klett, P.A., Palm Beach Gardens, FL, for Creditor, Sheehan Prosperity Gardens.

Peter Edwards, Siegfried, Kipnis, Rivera, Lerner & De La Torre, Coral Gables, FL, for CES Industries.

Holland & Knight by John H. Genovese and Scott B. Newman, Miami, FL, for Canadian Imperial Bank of Commerce.

Gunster, Yoakley & Stewart by L. Louis Mrachek and C. Craig Eller, West Palm Beach, FL, Furr & Cohen by Les Osborne, Robert C. Furr, Boca Raton, FL, for debtor.

Steven L. Perry, Palm Beach Gardens, FL, for Soverel Harbor, Inc., Soverel Development Palm Beach and Mark Soverel individually.

David L. Gorman, P.A., North Palm Beach, FL, for P.B. Davis Const.

Greenberg, Traurig by Juan Loumiet, Miami, FL, for Phillipe Berman, David Kelso and Islands & Castles.

Blackwell & Walker by Charles E. Sammons, Miami, FL, for Dr. Kosove.

Amber Donner, United States Trustee's Office, Miami, FL.

Ackerman, Bakst, Cloyd & Scherea by Daniel L. Bakst, W. Palm Beach, FL, for Pifer, Inc., Schaefer–Fagan Consulting Engineers, Inc., and Sheehan Realty Corp.

## SUPPLEMENTAL OPINION ON ORDER DENYING EMERGENCY MOTION TO REOPEN CASE UNDER SECTION 350(b) OF THE BANKRUPTCY CODE

ROBERT A. MARK, Bankruptcy Judge.

By Order dated June 11, 1993, the Court denied the Emergency Motion of Creditor, Sheehan Realty Corporation, to Reopen this case under Section 350(b) of the Bankruptcy Code ("Emergency Motion"). This case was previously dismissed by Order dated February 5, 1992 ("Order of Dismissal"), granting the motions of Secured Creditors, Canadian Imperial Bank of Commerce ("CIBC") and P.B. Davis Construction, Inc. and David L. Gorman, Trustee, to Dismiss Petition or, in the Alternative, to Abstain from Exercising Jurisdiction and for Relief from Automatic Stay ("Motion to Dismiss"). No appeal was taken from the Order of Dismissal[1].

The Emergency Motion was filed approximately sixteen (16) months after the Order of Dismissal was entered and is brought under Section 350 of the Bankruptcy Code[2] and Rule 5010 of the Federal Rules of Bankruptcy Procedure. The Movant urges the Court to apply the "for cause" provision of § 350(b)

to reopen this case based upon its contention that it has not been treated fairly and equitably in the Bahamian liquidation proceedings. Movant alleges that the Liquidator appointed in the Bahamas failed to expeditiously process creditors' claims and failed to notify creditors of the status of a proposed purchase of the Debtor's principal asset until three months after the fact.

■ The Emergency Motion is in essence premised upon factors that are normally argued in the context of a Federal Rule of Civil Procedure 60(b) motion[3] according relief from a judgment or order based upon newly discovered evidence. Obviously aware that the one year limitation on 60(b) motions has expired, Movant seeks relief under § 350(b), which under Rule 5010, Fed.R.Bankr.P., is not subject to the one year time limit.

The Court finds relief under § 350(b) inappropriate to the Movant's allegations. Essentially Movant seeks to have the Court rehear its Order of Dismissal based upon what is characterized as newly discovered evidence or purported misrepresentations by a party who sought and obtained the Order of Dismissal. Relief based upon these allegations must have been brought within one year of the Order of Dismissal under Rule 9024, Fed.R.Bankr.P. and Rule 60(b) Fed.R.Civ.P. Thus, the Court finds it lacks jurisdiction to reopen the case. *See Cimo v. Petty*, 848 F.2d 654 (5th Cir.1988) (Dismissal of bankruptcy petition terminated bankruptcy court's jurisdiction over case); *In re Solar Equipment Corporation*, 19 B.R. 1010 (W.D.La.1982) (Upon dismissal of Chapter 11 case, the bankruptcy court relinquished its jurisdiction over case).

■ Even if there was a basis to exercise jurisdiction, the Court would still deny the Emergency Motion. The evidence proffered would not justify reopening the case. Mov-

---

**1.** The Court's oral findings and conclusions in Support of the Order of Dismissal are relevant to its order denying the Emergency Motion to Reopen the case. Therefore, the Court is contemporaneously issuing a Supplemental Opinion incorporating the findings and conclusions supporting the dismissal.

**2.** 11 U.S.C. Section 350 states:

(a) After an estate is fully administered and the Court has discharged the trustee, the Court shall close the case.

(b) A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.

**3.** Applicable to contested matters in bankruptcy cases by virtue of Rule 9024, Fed.R.Bankr.P.

ant alleged that there was an imminent sale of the Debtor's principal asset, a Bahamian island and improvements thereon (the "Island"), for an amount which would be insufficient to even fully repay CIBC, which holds a first fixed and floating debenture over the Island (the Bahamian equivalent of a first mortgage lien). The Movant offered testimony that the Island could be sold for a substantially greater amount than the sale price resulting from the Bahamian proceeding, thus generating some recovery for other creditors. Since this will now not occur, the Movant contends that it has not been treated fairly and equitably in the Bahamian liquidation proceedings. For this reason, Movant argues that this Chapter 11 case should be reinstated so that a further effort can be made to obtain a greater price for the Island.

Contrary to the Movant's contention that CIBC represented that the Island would be sold for $10 Million Dollars, this figure was the value placed on the Island by the Debtor. For purposes of the Motion to Dismiss, CIBC did not dispute this valuation, since it was not seeking relief from the automatic stay based upon lack of equity. Transcript of Proceeding on Motion to Dismiss at 277. The Court did not receive or expect assurances from CIBC that it would be able with certainty under Bahamian law to yield any return to other creditors. The Court required CIBC to file liquidation proceedings in the Bahamas instead of granting stay relief permitting CIBC to exercise its private right of sale, so that an effort would be made to sell the Island under the auspices of Bahamian liquidation law. The Court's ruling was not premised on any guarantee that a Bahamian liquidation would result in distribution to creditors.

While many factors were considered in ruling on the Motion to Dismiss, the Court's primary focus was on the principle of comity. The Debtor is a Bahamian corporation, its principal asset a Bahamian Island. The Island had been pledged to creditors under debentures which were executed under Bahamian law and which provided for the rights of the parties to be determined under Bahamian law. Furthermore, the expert witness on Bahamian law who testified during the hearing on the Motion to Dismiss, stated that the laws of the Bahamas regulating the sale of real estate would not be preempted by the exercise of jurisdiction over the Debtor by a United States Bankruptcy Court. Based upon these considerations, the Court concluded that the principle of comity required that it respect the paramount interests of the Commonwealth of the Bahamas and its laws governing both the insolvency of its domestic corporations and rights with respect to real property located in the Bahamas.[4]

### CONCLUSION

The Court found it appropriate to dismiss this United States Bankruptcy case and allow the Bahamian courts to oversee the liquidation of the Debtor. It would be inappropriate and entirely inconsistent with the reasoning supporting the Order of Dismissal for the Court to now revisit the Motion to Dismiss and sit in judgment of what has transpired in the Bahamian liquidation proceedings. The Emergency Motion is denied.

**SUPPLEMENTAL OPINION ON MOTION TO DISMISS PETITION OR, IN THE ALTERNATIVE TO ABSTAIN FROM EXERCISING JURISDICTION AND FOR RELIEF FROM AUTOMATIC STAY** [1]

This cause came before the Court on the Motion to Dismiss Petition or, in the Alterna-

---

4. While the Court could have attempted to fashion relief in the United States bankruptcy proceedings through personal jurisdiction over CIBC and other creditors, and its ability to order those subject to its jurisdiction to take certain actions in the Bahamas, the Court deemed it inappropriate to attempt to accomplish indirectly that which it could not do directly because of the limitations on its jurisdiction over Bahamian real property. *See* Supplemental Opinion on Motion to Dismiss, issued concurrently with this opinion.

1. The Court announced its findings of fact and conclusions of law on the Motion into the record on December 19, 1991 and entered its written Order, incorporating said findings and conclusions, on December 20, 1991. The Court deems it appropriate to issue this Supplemental written opinion since the findings and conclusions are relevant to a more recently filed Motion to Reopen the Case. A Supplemental Opinion denying that motion is being issued together with this opinion.

tive, to Abstain from Exercising Jurisdiction and for Relief from Automatic Stay ("Motion"), filed by Canadian Imperial Bank of Commerce ("CIBC").[2] An evidentiary hearing was held and legal argument presented on the Motion on December 18 and 19, 1991.

The Debtor in this case is a Bahamian corporation whose principal asset is an island located in the Bahamas (the "Island"). The Debtor's intent was to develop the Island into a residential development and a member-owned resort (the "Club") consisting of a clubhouse, 144 club villas, 125 single family homesites, various marine and dining facilities, an airstrip and other amenities. Part of the financing for the improvements on the Island came from a $3 million loan funded by a Bahamian branch of CIBC. The loan was secured by way of debentures and indentures on the Island.

When the project faltered, three insiders of the Debtor, including its president, Mark Soverel, sought relief in this Court by filing an involuntary petition under Chapter 11 of the Bankruptcy Code. CIBC vigorously contested the filing of the bankruptcy case in the United States by promptly filing its motion to dismiss.

CIBC argued four alternative bases for the dismissal of this bankruptcy case:[3]

(1) That the Debtor, Spanish Cay Co., Limited, does not qualify as a "debtor" under Section 109(a) of the Bankruptcy Code;

(2) That the involuntary Chapter 11 case is a bad faith filing under Section 1112 of the Bankruptcy Code because the petitioning creditors had assigned their claims against the Debtor to CIBC prior to the filing of the petition and therefore were not the "holders of a claim" under Section 303 of the Bankruptcy Code;

(3) That pursuant to Section 305(a)(1) of the Bankruptcy Code, the Court should

abstain from exercising its jurisdiction and dismiss this bankruptcy case because the interests of the creditors and the Debtor would be better served by allowing either a bankruptcy case or liquidation proceeding involving the Debtor to be brought in The Commonwealth of the Bahamas ("Bahamas"); and

(4) That the Court should (a) grant CIBC relief from the automatic stay for cause pursuant to Section 362(d)(1) of the Bankruptcy Code to allow CIBC to commence an insolvency proceeding in the Bahamas with respect to the Debtor; and (b) thereafter, abstain from exercising its jurisdiction and dismiss this proceeding pursuant to Section 305(a)(2) of the Bankruptcy Code.

Based upon the evidence and legal arguments presented, and for the reasons set forth in this opinion, the Court finds that the Debtor is eligible for relief under Section 109(a) of the Bankruptcy Code and that the case should not be dismissed as a bad faith filing. The Court, however, grants CIBC relief from the automatic stay for cause pursuant to Section 362(d)(1) to institute insolvency proceedings with respect to the Debtor in the Bahamas. Upon the filing of such proceedings, the Court will abstain from exercising its jurisdiction and dismiss this bankruptcy case pursuant to Section 305(a)(2).[4] Because the Motion presents some novel issues of law, the Court will individually analyze each of the alternative arguments advanced by CIBC.

### A. SPANISH CAY QUALIFIES AS DEBTOR UNDER SECTION 109(a)

#### 1. *Relevant Facts.*

The Debtor's president, Mark Soverel, testified that the principal place of business of

---

**2.** This proceeding was commenced when insiders of the Debtor, Mark Soverel, Soverel Harbour, Inc. and Soverel Development Palm Beach, filed an involuntary petition under Chapter 11 of the Bankruptcy Code on October 11, 1991. A second involuntary case was commenced when Pifer, Inc., Schaefer–Fagan Consulting Engineers, Inc. and Sheehan Realty Corporation filed an involuntary petition under Chapter 7 of the Bankruptcy Code on October 16, 1991. The two cases were consolidated by the Court on Decem-

ber 3, 1991 into a single consolidated Chapter 11 case.

**3.** A similar motion was filed by P.B. Davis Construction, a secured creditor of the Debtor. For the purposes of this opinion, the Court will refer to and decide the two motions together.

**4.** The Court's order of dismissal was entered on February 5, 1992. No appeal was taken.

the Debtor was a houseboat located in Palm Beach County, Florida. Furthermore, it was from this business location that the Debtor sold lots on the Island and memberships in the Club and conducted the advertising, marketing and other business affairs of the Debtor. Mr. Soverel also testified that the Debtor owned property in the United States consisting of marketing and advertising materials and other improvements and equipment located on the houseboat in Palm Beach County, Florida. Additionally, Mr. Soverel testified that the Debtor maintained a bank account in the United States.

CIBC established through evidence that at the time of the filing of the Motion, the Debtor was not registered to conduct business in Florida with the Florida Secretary of State, was not registered with the Florida Department of Land Sales to sell real property located in the Bahamas through offices in Florida, and had never filed a United States income tax return. The houseboat from which the Debtor conducted its business was also the principal place of business of several other entities owned and managed by Mark Soverel. CIBC introduced documentary evidence buttressed by testimony which suggested that the marketing, advertising and other business activities allegedly conducted by the Debtor in the United States were actually conducted by affiliates of the Debtor. The Debtor did not own nor rent pursuant to any written lease the houseboat which it occupied in Palm Beach County, Florida. The bank account maintained by the debtor in Florida had a balance of only $100.

### 2. Legal Analysis.

Spanish Cay qualifies as a "debtor" under Section 109(a) of the Bankruptcy Code. That section provides, in part, that:

> Only a person who resides or has a domicile, a place of business or property in the United States or a municipality may be a debtor under this Title.

11 U.S.C. § 109(a)

The Debtor concedes it is not a resident of the United States and does not have a domicile in the United States. Therefore, the relevant inquiry is whether the Debtor has a place of business or property in the United States.

■ CIBC argues that the Debtor does not have a place of business in the United States, or if the Debtor has a place of business in the United States, it should not be recognized under Section 109 of the Code. CIBC contends that any business being conducted by the Debtor from a location in the United States is unlawful since the Debtor did not file tax returns, did not register until after the filing of the Motion to do business in Florida, and did not register with the Florida Division of Land Sales to sell Bahamian land out of its offices in Florida. Although these facts were not rebutted, CIBC cited no case in which a bankruptcy court denied jurisdiction under Section 109 based upon a debtor's failure to comply with potentially applicable State laws regulating business entities. This Court refuses to deny the debtor eligibility under Section 109 on these grounds.

■ CIBC's argument that any business allegedly being done by the Debtor in the United States was actually being conducted by related entities and not by the Debtor also is insufficient to deny the Debtor eligibility under Section 109. Although some of the advertising and marketing activities conducted in the United States may have been conducted by one of the other Soverel affiliates, the Court concludes that there is a continuity of interest between the related Soverel entities and the Debtor.

■ Without question, the Debtor or its related entity, The Club at Spanish Cay, was engaged in the sale of property and Club memberships through offices in Florida. These entities were also engaged in business transactions relating to the construction activity on the Island.[5] Additionally, the Court

---

**5.** As explained by Mr. Soverel, the ultimate goal was for the Debtor entity to sell sufficient property and obtain sufficient memberships in the Club at Spanish Cay located on the Island to complete the facilities. Then the Debtor would transfer the Club amenities to the equity holders of the Club at Spanish Cay in exchange for the monies raised from the sale of the memberships. However, until that is accomplished, sales of property and club memberships and the development of

finds that the Debtor owns property in the United States as evidenced by the marketing materials, advertising materials, equipment on the houseboat, and the bank account maintained by the Debtor in the United States. Thus, since the debtor has a "place of business" in Florida and owns "property in the United States" it satisfies the jurisdictional nexus required by Section 109(a) of the Bankruptcy Code. *See, e.g., In re Carnera,* 6 F.Supp. 267 (S.D.N.Y.1933) (Italian boxer who maintained place of business in hotel room in New York City was eligible for relief under Bankruptcy Act despite fact that he did not have a residence or domicile in the U.S.).[6] Therefore, CIBC's motion to dismiss, to the extent it relies on the argument that the Debtor does not qualify under Section 109(a), is denied.

## B. THIS CASE SHOULD NOT BE DISMISSED AS A BAD FAITH FILING

### 1. *Relevant Facts.*

Prior to the filing of the involuntary Chapter 11 petition, the petitioning creditors executed an assignment document referred to as a "postponement of claims." The assignment provided for the claims of these petitioning creditors to be assigned to CIBC upon the commencement of any bankruptcy or insolvency proceeding instituted with respect to the Debtor. CIBC argued that this evidence together with the fact that the second involuntary petition was commenced as a liquidation proceeding under Chapter 7 of the Bankruptcy Code warrants dismissal of the case as a bad faith filing.

CIBC also argued that the failure of the Debtor to register to do business in Florida or to register to sell real property through its offices in Florida supports its claim of a bad faith filing by the Debtor. Furthermore, the filing of an involuntary petition on the part of the insiders of the Debtor is a further

indication of bad faith. CIBC bases its argument on the inability by the Debtor to file a voluntary petition due to a split of opinion amongst its board of directors.

Finally, CIBC urges the Court to find bad faith arguing that there is no likelihood for the Debtor to reorganize. On this issue, CIBC introduced the testimony of Ralph Seligman, an expert on Bahamian insolvency law. His testimony suggested that a successful plan of reorganization could not be accomplished since certain orders which would most likely have to be entered by this Court to effectuate such a plan would be given little credence by the authorities in the Bahamas. For example, the Debtor put on testimony that it had the potential to secure financing from members of the Club at Spanish Cay, financing needed to finish the first phase of the development of the Island. The financing was, however, premised upon the Court granting a priority lien on the Island to the postpetition lender. The expert testimony indicated that such a priority lien would most likely be given no effect in the Bahamas.[7]

### 2. *Legal Analysis.*

None of the arguments asserted by CIBC, nor the evidence presented at the hearing, establish a sufficient basis to dismiss the case as a bad faith filing. CIBC argues that dismissal of the Soverel involuntary petition would be important since the other petition was filed as a petition for relief under Chapter 7 which would be very similar to liquidation under Bahamian laws. This distinction is not significant since the Debtor consented to relief in response to the two petitions, and the cases have been consolidated into a single Chapter 11 case.

Although this is essentially a single asset case, it is not a two-party dispute. The objective criteria for evaluating bad faith motions in the Eleventh Circuit do not closely apply. *In re Phoenix Piccadilly, Ltd.,* 849

---

the Island are all part of a common effort necessary to make the venture a success.

6. CIBC cites *In re Kava Bowl,* 41 B.R. 244 (Bankr.D.Haw.1984) in support of its position that Spanish Cay has failed to meet the Section 109 criteria. The Court finds *Kava Bowl* factually distinguishable. In *Kava Bowl,* unlike the present case, there was no real business activity

being conducted by the debtor in the district and virtually all the creditors were located in the foreign jurisdiction. Unlike the debtor entity in *Kava Bowl,* the Debtor in the present case was engaged in business activities in the United States.

7. Mr. Seligman's testimony is described in greater detail in Section C. below.

F.2d 1393 (11th Cir.1988). In the present case, there are numerous creditors with varying interests at stake.

■ The Court is concerned with the strategy employed in the commencement of the involuntary Chapter 11 case. The filing of an involuntary petition may have been motivated, in part, by the inability to obtain consent of the board of directors of the Debtor to file a voluntary case. Nevertheless, the petition was filed by the Soverel entities as creditors and not as shareholders. The issue is also moot since the case now includes the case commenced by the non-insider creditors.[8]

If this case involved property in the United States, the evidence would clearly be insufficient, at this stage, to demonstrate an inability to reorganize. As an ongoing entity this project may be worth significantly more than the outstanding secured claims. Absent evidence that the project was not viable, there would be no basis at this stage in the case to either grant stay relief to allow CIBC to proceed with a foreclosure or to cut short the Debtor's efforts to reorganize in a Chapter 11. It is CIBC's burden to establish the absence of a "reasonable possibility of successful reorganization within a reasonable time." *United Savings Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). CIBC has not met this burden at this time. Therefore, CIBC's motion to dismiss, to the extent it relies on an argument of bad faith, is denied.

## C. THIS COURT WILL ABSTAIN FROM EXERCISING ITS JURISDICTION AND DISMISS THIS CASE AFTER GRANTING CIBC RELIEF FROM THE AUTOMATIC STAY TO INSTITUTE LIQUIDATION PROCEEDINGS IN THE BAHAMAS

### 1. *Relevant Facts.*

What remains to be considered are the more difficult and novel issues regarding abstention. Central to these issues is the fact that the Debtor is a Bahamian company with its principal asset being real property located in the Bahamas. Several of the Debtor's creditors are Bahamian entities, including the Bahamian government, over which this Court would not have personal jurisdiction. The loan documents executed by the Debtor in favor of CIBC were admitted into evidence and provided that Bahamian law was to govern, in all respects, the rights and obligations of the Debtor and CIBC.

The testimony of Mr. Ralph Seligman, an expert on Bahamian insolvency law, was significant. Mr. Seligman testified that this Court could not prevent Bahamian citizens and Bahamian governmental agencies from proceeding with their claims against the Debtor in the Bahamas notwithstanding the pendency of this Chapter 11 case in the United States. Bahamian creditors could even enforce their claims through execution against the Island, thus depriving the estate of its primary asset.

Mr. Seligman also testified that certain orders of this Court would probably not be enforceable in the Bahamas. For example, Bahamian courts might not recognize the appointment of a trustee by this Court to manage the Island and would most likely not recognize this Court's imposition of any priority liens to secure debtor-in-possession financing. Mr. Seligman also testified that any order imposing further encumbrances on the Island or any order approving a sale of the Island by this Court may not be recognized or approved by the Bahamian authorities.

Finally, Mr. Seligman testified to the similarities between Bahamian insolvency law and the Chapter 7 bankruptcy laws of the United States. He acknowledged that Bahamian insolvency law does not include reorganization provisions similar to Chapter 11 of

---

**8.** This lack of board consensus to file a voluntary bankruptcy petition alone would not establish a basis to dismiss the involuntary petition as a bad faith filing, since the allegations of bad faith made by CIBC relate to the nature of the claims filed by the Soverel entities as petitioning creditors, not to their actions as owners of the equity interest. Nevertheless, it is of some relevance, since it indicates at least a lack of consensus among the shareholders to proceed with a bankruptcy case in the United States.

the Bankruptcy Code but stated that Bahamian insolvency law would insure just treatment of all holders of claims against or interests in the estate. He further testified that U.S. claim holders would be protected against prejudice and inconvenience in the processing of their claims in the Bahamas. He indicated that the filing of a claim in the Bahamas is a relatively simple process and that there is no discrimination against a creditor because of his or her nationality or residence. Mr. Seligman noted that Bahamian insolvency law prevents fraudulent dispositions of property of the estate and provides for the disposition of proceeds of the estate substantially in accordance with the priorities prescribed in Chapter 7.

### 2. *Legal Analysis.*

CIBC urged the Court to abstain under either of the two subsections of Section 305 of the Bankruptcy Code. Section 305 provides as follows:

(a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title at any time if—

(1) the interests of creditors and the debtor would be better served by such dismissal or suspension; or

(2)(A) there is pending a foreign proceeding; and

(B) the factors specified in section 304(c) of this title warrant such dismissal or suspension.

In effect, Section 305 provides for dismissal if either (1) it is in the best interest of both the debtor and creditors or, (2) if a foreign insolvency proceeding is pending and the factors set forth in Section 304(c) are satisfied.

### a. *Section 305(a)(1)*

■ CIBC has not established sufficient evidence for abstention under 305(a)(1). A dismissal under 305(a)(1) would not be in the best interest of *both* the creditors and the debtor as that test has been analyzed by bankruptcy courts. *See e.g., In re RAI Marketing Services, Inc.,* 20 B.R. 943 (Bankr. D.Kan., 1982); *In re Sky Group Int'l, Inc.,* 108 B.R. 86 (Bankr.W.D.Pa.1989).

If the case is dismissed, there can only be a liquidation proceeding in the Bahamas. Obviously, the debtor would prefer the opportunity to utilize Chapter 11 to attempt a reorganization. Accordingly, it would not be in the best interest of both the creditors and the debtor for the Court to abstain under Section 305(a)(1).

### b. *Section 305(a)(2)*

■ At the time of the hearing on CIBC's motion, there was no pending insolvency proceeding in the Bahamas and so, strictly speaking, Section 305(a)(2) does not apply. Nevertheless, the Court finds good reason to undertake a Section 305(a)(2) analysis.

The Court has considered the alternative of going through the procedural step of granting stay relief for the purpose of allowing CIBC to file its insolvency proceeding in the Bahamas and then requiring CIBC to come back before the Court when the Section 305(a)(2) argument will have technically ripened. However, since the Court finds now that abstention would be warranted under Section 305(a)(2), there is no practical reason to require this additional delay and expense. Accordingly, the Court grants CIBC stay relief for cause pursuant to Section 362(d)(1) of the Bankruptcy Code to permit CIBC to institute insolvency proceedings in the Bahamas, and will enter its order of abstention contingent and effective upon the actual commencement of an insolvency proceeding in the Bahamas.

■ Once the Court concludes, as it has, that Bahamian insolvency law should govern the rights and remedies of the parties, the proper focus is Section 305(a)(2) and its incorporation by reference of the factors in Section 304(c) which includes the principle of comity. Although comity is only one of six factors listed in Section 304(c) to be considered in determining whether to grant relief under Section 305(a)(2), it is often the most significant. *In re Gee,* 53 B.R. 891 (Bankr. S.D.N.Y.1985).

The *Gee* case cited to the Supreme Court's discussion of the principle of comity in *Hilton v. Guyot,* 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed.

95 (1895). The Supreme Court defined comity as:

> Neither a matter of absolute obligation on the one hand, nor a mere courtesy or goodwill, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.

159 U.S. at 164, 16 S.Ct. at 143. This principle goes to the heart of the issue in this case. Comity requires that this Court respect the paramount interests of the Bahamas. This includes its laws governing the insolvency of Bahamian companies and its laws governing rights with respect to real property located in the Bahamas.

Applying the principle of comity and deferring to the Bahamian courts and Bahamian law to govern any insolvency proceeding with respect to this Debtor is appropriate here since (1) the Debtor is a Bahamian company and (2) the Debtor's principal asset is real property located in the Bahamas. These facts weigh heavily in favor of abstention and dismissal of these proceedings. The courts of the Bahamas have the greatest interest in liquidating the assets of the Debtor. *Cunard Steamship Co., Ltd. v. Salen Reefer Services AB*, 773 F.2d 452, 458 (2d Cir.1985) ("American courts have consistently recognized the interest of foreign courts in liquidating or winding up the affairs of their own domestic business entities"). Moreover, it is a basic tenet of international law that real property should be governed by the laws of the country in which the property is located. *See e.g., El Cid, Ltd. v. New Jersey Zinc Co.*, 575 F.Supp. 1513 (S.D.N.Y.1983) ("it is well settled that where rights to real property are in issue, the law of the situs of the property controls.")

The Court also considers, under the comity analysis, the rights of all persons who are under the protections of the laws of the United States. As a matter of law, creditors dealing with the Debtor knew or should have known that they were dealing with a Bahamian company and that they would be bound by the laws of the Bahamas. The law is clear that

> every person who deals with a foreign corporation impliedly subjects himself to such laws of the foreign government, affecting the powers and obligations of the corporation with which he voluntarily contracts as the known and established policy of that government authorizes.

*Matter of Culmer*, 25 B.R. 621, 632 (Bankr. S.D.N.Y.1982) citing *Canada Southern Railway Co. v. Gebhard*, 109 U.S. 527, 3 S.Ct. 363, 27 L.Ed. 1020 (1883).

In this case both the Debtor and its creditors reasonably expected that Bahamian insolvency law would govern. In loan documents between the Debtor and CIBC, the parties specifically contracted for Bahamian law to apply. Additionally, exhibits introduced by secured creditor, P.B. Davis Construction, revealed that liquidation proceedings in the Bahamas were imminent and delayed based solely upon a settlement agreement that resulted in a mortgage in favor of P.B. Davis. In negotiating the mortgage the Debtor advised P.B. Davis in writing that the mortgage must provide for venue in the Bahamas and for Bahamian law to apply in any litigation. Thus, both the Debtor and its major creditors expected that Bahamian law would govern any insolvency proceeding of this Debtor.

The Debtor's primary argument against abstention is that, under Bahamian insolvency law, it would be deprived of any opportunity to reorganize and would be forced to liquidate its assets since Bahamian insolvency law does not provide for a reorganization procedure similar to Chapter 11. The potential for a successful Chapter 11 reorganization in this case is questionable, at best, since certain orders of this Court may be given no effect in the Bahamas. Furthermore, it may be impossible to reorganize or restructure claims of the various Bahamian creditors and governmental agencies who are not subject to the jurisdiction of this Court. This Court could not prevent Bahamian citizens and the Bahamian governmental agencies from proceeding with their claims against the Debtor during the pendency of this bankruptcy case. This could result in an execution on the

Island by one of those foreign creditors thereby leaving nothing to be reorganized in this bankruptcy case. Moreover, the courts of the Bahamas might not recognize the appointment of a Trustee by this Court to manage the Island and might not recognize the Court's imposition of a lien to secure debtor-in-possession financing.[9] Any orders for further encumbrances on or orders of sale of property of the estate by this Court may not be recognized or approved by the Bahamian authorities. Accordingly, it most likely would be futile to maintain a Chapter 11 case in the United States.

 Even assuming a Chapter 11 case could be successful, this case involves real property located in the Bahamas owned by an entity organized and subject to Bahamian law. The fact that the Bahamian law does not contemplate or allow a reorganization process comparable to our Chapter 11 is no reason to deny abstention. In determining whether to defer to a Bahamian liquidation, the issue is not whether a reorganization is possible under Bahamian law. Rather, under 304(c), the Court must determine whether creditors will be justly treated and protected from prejudice. Section 304(c)(4) refers to "distribution of proceeds ... substantially in accordance with the order prescribed by [the Bankruptcy Code]." This does not mean that a foreign proceeding must allow for reorganization. It simply means the foreign jurisdiction should have a compatible priority scheme for distribution of the assets of an insolvent debtor.

The liquidation laws of the Bahamas are in harmony with those of the United States. *Matter of Culmer*, 25 B.R. 621 (Bankr. S.D.N.Y.1982). *Culmer* was a § 304 ancillary proceeding. To determine whether the U.S. assets should be transferred to and liquidated in the Bahamas, the court had to apply the same § 304(c) factors applicable to the Court's decision here. Bankruptcy Judge Lifland thoroughly reviewed Bahamian liquidation laws and procedures and found that Bahamian liquidations comport with

§ 304(c) and the principle of equality of distribution. The Court concluded that "the liquidation laws of the Bahamas are in harmony with those of the United States and must be afforded comity." 25 B.R. at 632.

 While it is obvious that the principals of the Debtor would prefer to restructure under United States bankruptcy law, the money put at risk by the investors in this project was put at risk under Bahamian law and not United States law. Therefore, from the standpoint of the investors and from the standpoint of CIBC, both the risks and benefits in the various transactions were governed by the rights and remedies that each party would have under Bahamian law, whether or not those rights are more restricted than the rights under United States law. The Debtor cites no authority in which a Chapter 11 was used to restructure interests in real property located in a foreign jurisdiction with a foreign debtor and foreign law controlling the rights of the parties. This Court finds it impermissible to use Chapter 11 to accomplish this result.

The Debtor concedes that this Court does not have jurisdiction to enter enforceable orders directly altering or restructuring rights in or against the Bahamian property. However, the Debtor argues that because CIBC is fortuitously doing business in the United States and is therefore subject to personal jurisdiction here, the Court could and should exercise that personal jurisdiction to order CIBC to subordinate or restructure its interest in the Island as part of a Chapter 11 plan. The Court declines to exercise personal jurisdiction to accomplish indirectly what it could not accomplish directly absent *in rem* jurisdiction over the real property.

### CONCLUSION

The Debtor satisfies the jurisdictional requirements of § 109 of the Bankruptcy Code and its Chapter 11 case is not subject to dismissal as a bad faith filing. However, abstention is appropriate since the Debtor is a Bahamian corporation whose primary asset

---

9. The inability of the Court to impose a priority lien to secure DIP financing is very important since the testimony of the debtor established that it had only $100 at the present time to pay its

debts and that any proposed plan of reorganization would hinge on the Court granting a priority lien to secure DIP financing.

is real property located in the Bahamas. Thus, the Court grants CIBC stay relief to commence insolvency proceedings in the Bahamas. Upon the filing of the Bahamian proceeding, this Court will abstain from exercising its jurisdiction and dismiss this case.[10]

10. The Court's written order granting stay relief was entered on December 20, 1991. Following written notification that CIBC had commenced insolvency proceedings against the Debtor in the Bahamas, the Court entered its order dismissing the case on February 5, 1992.