**In re Petition of Hideki KOJIMA, as trustee of the Estate of the Grandote Country Club Co., Ltd., Debtor in a Foreign Proceeding.**

No. 94–003–SBB.

United States Bankruptcy Court, D. Colorado.

Feb. 17, 1995.

Nancy D. Miller, Denver, CO, for petitioner.

Harry Simon, Denver, CO, for RTV LLC.

William VanHorn, Denver, CO, for U.S. Trustee.

Dean T. Ogawa, Gerald D. Sjaastad, Colorado Springs, CO, for respondents.

## MEMORANDUM OPINION AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court on the Petition in a Case Ancillary to a Foreign Proceeding filed by Hideki Kojima ("Petitioner" or "Mr. Kojima"), as trustee of the estate of the Grandote Country Club Co., Ltd., on October 25, 1994, the Answer thereto filed by Dwight Harrison and Grandote International Ltd. Liability Co. (the "LLC") (collectively, the "Respondents"), on December 1, 1994, the Motion to Dismiss filed by the Respondents on December 1, 1994, and the Petitioner's Objection to the Motion to Dismiss and request for hearing filed December 27, 1994. The Court, having reviewed the file, conducted an evidentiary hearing, and being advised in the premises, makes the following findings of fact, conclusions of law, and enters the following Order.

### I. *Introduction.*

The issue presented to this Court, one of first impression in this Circuit, is raised by the Administrator, or Trustee, of a pending bankruptcy case in Japan. The Trustee, Hideki Kojima, wants to commence an ancillary proceeding in the United States Bankruptcy Court for the purpose of pursuing claims against certain United States creditors and/or United States residents who claim a right, title and interest in real property which the Trustee claims, as well. The Trustee's Petition is opposed by the Respondents, United States citizens and a limited liability corporation, who claim that the Japanese Trustee has no right or authority to proceed in the United States Bankruptcy Court.

This Court concludes that the Japanese Trustee has the right and authority to commence an ancillary proceeding and pursue his claims in the United States Bankruptcy Court.

### II. *Factual Background.*

In 1991, Koichi Hashimoto contracted to buy a golf course and certain other real property located in the town of LaVeta, County of Huerfano, Colorado (the "golf course") from a Colorado partnership, Grandote Golf and Country Club (the "Sale and Purchase Agreement," as amended). The seller took back a promissory note in the face amount of $1,780,714.20 and a deed of trust. The actual down payment appears to have been less than the amount required by the Sale and Purchase Agreement, so the conveyance was made subject to a prior existing deed of trust [1] and certain unpaid taxes. Exhibits E, F, G, H, 3, 4, and 5.

On January 20, 1993, Mr. Hashimoto assigned the contract to Grandote Country Club Co., Ltd. ("Grandote" or the "Debtor"), a corporation of which he was a former principal, by special warranty deed recorded February 1, 1993. Exhibit I. Grandote is a corporation organized under the laws of Japan with a principal place of business in Tokyo, Japan. Grandote's principal asset consisted of the golf course located in the state of Colorado.

The Debtor's corporate records indicate that payments on the Sale and Purchase Agreement via wire transfers and cash were made by and credited to Grandote. Exhibits Y, 10, and 11. All parties to the Sale and Purchase Agreement, however, have now

---

1. Commonly referred to as the Emmetsburg Note, the note was subsequently taken over by the Resolution Trust Corporation.

made numerous allegations of default as against the other parties to that agreement.

On December 8, 1993, Dwight Harrison,[2] individually, filed an involuntary Chapter 11 Petition against Grandote in this District (93–23078–PAC) (the "Chapter 11 Case"). Exhibit M. An Order for Relief entered on February 1, 1994. The record reflects that, on February 8, 1994, a Consent to the entry of the order for relief was filed which was purportedly executed by Mr. Hashimoto as Chief Executive Officer of Grandote.[3]

Both the United States Trustee and the Resolution Trust Corporation filed motions to dismiss the Chapter 11 Case in April 1994. Dwight Harrison, in his individual capacity, filed a Consent to Dismissal of the Chapter 11 Case on May 10, 1994, and on May 31, 1994, Judge Patricia Ann Clark of this District entered an Order dismissing the case. Exhibits O and P (Notice of Dismissal dated June 17, 1994). The case file was administratively closed on July 26, 1994.

On May 2, 1994, while the Colorado bankruptcy case was still pending, Grandote, the then Chapter 11 Debtor-in-Possession, purportedly executed a general warranty deed conveying the golf course and water rights to Grandote International Ltd. Liability Co. (the "LLC Deed"). Exhibits K and 2. The LLC Deed was allegedly signed by Noriyuki Hoshi,[4] attested to by Mr. Hashimoto, and recorded on May 23, 1994.[5] It is undisputed that the attempted conveyance was done during the prior Chapter 11 case, but without court authorization and without notice to creditors.[6] An identical deed was executed, evidently concurrently, by Mr. Hashimoto, individually (the "Hashimoto Deed").[7] Exhibit 1. Although purportedly forgiveness of debt by Dwight Harrison constituted a major portion of the consideration for the deeds,[8] no records were produced to evidence the alleged debt forgiveness.

Grandote subsequently filed a voluntary petition for liquidation in Japan on July 28, 1994. Grandote was determined to be a bankrupt company[9] and Mr. Kojima was appointed as the Administrator, the Japanese equivalent of a bankruptcy trustee under our Bankruptcy Code,[10] on September 1, 1994.[11] Exhibit B. Mr. Kojima is, consequently, the duly appointed foreign representative of

2. Dwight Harrison is the father of the principals involved in the LLC and was the general managing partner of the Seller, Grandote Golf and Country Club whose other partner(s) are unidentified. Exhibit 7.

3. The evidence demonstrates that Mr. Hashimoto once served as a Director, but never served in the capacity of "Chief Executive Officer" for Grandote. In Japan, there is no such position as "Chief Executive Officer." The closest position appears to be "Representative Director," the only person with legal authority to bind the corporation in these circumstances. The designated "Representative Director" must be listed in the corporate registry that is maintained in the principal location of the business. Mr. Hashimoto was never listed as the more powerful, "Representative Director" of Grandote, only under the more generic title "Director".

4. Mr. Hoshi, the Representative Director of Grandote for the period October 1993 through June 1994 (Exhibit U), has allegedly denied executing the LLC Deed. The purported signature appears, however, to be acknowledged by the United States Consul in Fukuoka, Japan.

5. The LLC Deed recited consideration of $10.00 and bears an indication of $5.00 state documentary fee.

6. There appear to be no corporate minutes or resolution by Grandote authorizing the execution of the LLC Deed.

7. The Hashimoto Deed recited consideration of $10.00 and bears an indication of a $5.00 state documentary fee.

8. The sum of $20,000.00 cash, as well as promises to forbear foreclosure on the note and deed of trust, to "forgive debt", and/or to continue to service Grandote golf memberships also purportedly served as consideration.

9. See, Articles 126 through 141 (adjudication of bankruptcy), Bankruptcy Law of Japan (1991).

10. See, Articles 7 (powers), 142 and 157 (appointment by court), 159 (certificate of appointment), 161 (court supervision), 162 (capacity to sue and be sued), 164 (duty of care), and 165 (appointment of agent with court approval), Bankruptcy Law of Japan (1991).

11. See, Article 126(1), Bankruptcy Law of Japan (1991).

Grandote, a debtor in a foreign proceeding.[12]

Grandote's books and records were in disarray and/or missing and Mr. Kojima's investigation has uncovered few assets located in Japan.[13] The Japanese creditors include purchasers of memberships with claims which total approximately ¥3,000,000,000,[14] apparently paid to Grandote and/or affiliates thereof under the control of Mr. Hashimoto. The total of the general unsecured claims is ¥1,370,690,503,[15] and tax claims total ¥5,482,-540.[16] Mr. Hashimoto has since disappeared and his current whereabouts are unknown.

Mr. Kojima maintains that, as the Japanese case now stands, the principal asset of Grandote is a legal and equitable claim, or title, to the golf course. The value of the golf course appears to be approximately $2,500,-000.00.[17] A note and deed of trust currently held by the Resolution Trust Corporation is presently in default in the approximate amount of $600,000.00. In addition, taxes due and owing to Huerfano County are in default in the approximate range of $300,-000.00 to $330,000.00.[18] Tax certificates have been issued and are now held by a third party, RTV Limited Liability Company. On or about April 22, 1995, the tax certificates will go to deed unless redeemed prior to that time.

Mr. Kojima brought the within ancillary petition to (a) provide a jurisdictional vehicle to allow him to continue his investigation into assets located in the United States, (b) conduct discovery, (c) commence an adversary proceeding in this Court against the Huerfano County Treasurer and others to enjoin enforcement of the tax lien against the property, and (d) to have this Court determine Grandote's rights and interests in the golf course and related property in the hopes of recovering some value for the benefit of the estate and creditors both in the United States and in Japan.[19]

### III. *Discussion.*

Section 304 empowers a "foreign representative" appointed in a "foreign proceeding" to commence a "case ancillary to [that] foreign proceeding" by filing a petition in the bankruptcy court. 11 U.S.C. § 304(a). *See, generally, In re Koreag, Controle et Revision S.A.,* 961 F.2d 341, 348 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 188, 121

---

12. There appears to be no dispute that Mr. Kojima and Grandote constitute a foreign representative and a foreign proceeding, respectively, as defined by the Bankruptcy Code. 11 U.S.C. § 101(24) and (23).

13. The exchange rate as of February 7, 1995 was 99.46 yen equal one U.S. dollar (¥99.46 = US$1). DENV.POST, Feb. 8, 1995, at C1, col. 1. The non-golf course assets are valued at ¥1,497,-259, or approximately $15,051.00 on February 7, 1995.

14. Approximately $30,162,879.00.

15. Approximately $13,781,324.00.

16. Approximately $55,123.00.

17. The $2,500,000.00 value is derived from an appraisal done on behalf of the Resolution Trust Corporation in connection with the Colorado bankruptcy case and to which the parties have alluded. Yoshitada Ogiso, agent for the trustee Mr. Kojima, testified that he believes the golf course is fairly valued at $2,500,000.00. Exhibit C.

This Court finds that Dwight Harrison's currently held personal value estimate of approximately $850,000.00 is not as persuasive as the formal appraisal and is weakened by other portions of his testimony regarding extensive renovations and capital improvements made to the golf course since 1991 and the increase in average net operating revenue, which would, by logical extension, increase its value. Since values of golf courses are often based upon a multiple of the net operating revenue, this fact also belies his $850,000.00 value estimate. Moreover, Dwight Harrison, in filing the bankruptcy schedules in the previous, involuntary case (93–23078–PAC), adopted the value of $2,500,000.00 for the property. Exhibit N (Exhibit "A" thereto, Summary of Schedules, Schedule A, and Schedule D).

In any event, the actual value is neither fully at issue here nor particularly probative to the questions *sub judice.*

18. A portion of these taxes had accrued since 1989, predating the 1991 contract.

19. Although the exact course of action of the Japanese Administrator is not specified, it is suggested that the vehicles he might use to advance his claims to the golf course would be one or more adversary proceedings in the nature of (a) seeking to avoid the alleged fraudulent transfer of the golf course, (b) seeking to avoid the transfers made during the Chapter 11 Case without notice or Court approval, (c) requesting declaratory judgment, and/or (d) instituting an action to quiet title.

L.Ed.2d 132 (1992); *In re Rubin,* 160 B.R. 269, 274 (Bankr.S.D.N.Y.1993).

> An ancillary case under Section 304
>
> is not a full-scale bankruptcy case with an automatic stay prohibiting dismemberment of assets by vigilant creditors or with avoiding powers given to a fiduciary ... to ensure equality of distribution among creditors. *See, Cunard Steamship Company Limited v. Salen Reefer Services AB,* 773 F.2d 452, 454 (2d Cir.1985). Rather **a 304 case is a limited one, designed to function in aid of a proceeding pending in a foreign court.** H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 324–325 (1977); S.Rep. No. 95–989, 95th Cong. 2nd Sess. 35 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5821, 6280, 6281; 2 Collier, Bankruptcy ¶ 304.01 (15th ed. 1985); *In re Trakman,* 33 B.R. 780, 783 (Bankr.S.D.N.Y.1983); *[Matter of] Culmer,* 25 B.R. 621, 624 (Bankr.S.D.N.Y.1982).

*In re Gee,* 53 B.R. 891, 896 (Bankr. S.D.N.Y.1985) (emphasis added).

*Accord, Matter of Axona International Credit & Commerce Limited,* 88 B.R. 597, 607 (Bankr.S.D.N.Y.1988), *aff'd,* 115 B.R. 442 (S.D.N.Y.1990), *appeal dismissed,* 924 F.2d 31 (2d Cir.1991) ("A § 304 ancillary proceeding was conceived as a more efficient and less costly alternative to a full bankruptcy case. However, ... Congress gave a foreign representative the option of commencing a full bankruptcy case if the estate is substantial enough to require a full case for proper administration. Section 304 was not intended to be a foreign representatives exclusive remedy.").

Section 304 had no predecessor under the former Bankruptcy Act. By its inclusion, "Congress provided a mechanism for the courts in this country to aid foreign courts and accommodate the increasing number of foreign insolvency proceedings having extraterritorial effects within the United States." *Gee, supra* at 896. As a consequence, a bankruptcy court is now given the very broad[20] and flexible power to

(1) enjoin the commencement or continuation of—

  (A) any action against—

    (i) a debtor with respect to property involved in such foreign proceeding; or

    (ii) such property; or

  (B) the enforcement of any judgment against the debtor with respect to such property, or any act or the commencement or continuation of any judicial proceeding to create or enforce a lien against the property of such estate;

(2) order turnover of the property of such estate, or the proceeds of such property, to such foreign representative; or

(3) order other appropriate relief.

11 U.S.C. § 304(b).

> In allowing the bankruptcy court to order 'other appropriate relief,' Congress has recognized the bankruptcy courts' need for considerable flexibility in confronting the multitude of complex and unforseen [sic] problems that are associated with international bankruptcy cases.

*Gee, supra* at 896–97 (citation omitted).

> As the enactment of section 304 of the Bankruptcy Code demonstrates, the United States in ancillary bankruptcy cases has embraced an approach to international insolvency which is a modified form of universalism accepting the central premise of universalism, that is, that assets should be collected and distributed on a worldwide basis, but reserving to local courts discretion to evaluate the fairness of home country procedures and to protect the interests of local creditors.

*In re Maxwell Communication Corp. plc,* 170 B.R. 800, 816 (Bankr.S.D.N.Y.1994).

■ Once a petition under Section 304 is filed, and it is either "not timely controvert[ed]," or controverted yet still accepted by the Bankruptcy Court, then the court may determine whether to grant relief under Section 304(b) by considering "what will best assure an economical and expeditious admin-

---

**20.** The Court "is free to broadly mold appropriate relief in near blank check fashion without the necessity of trial when a party in interest does not controvert the petition, or after trial if there is controversion [sic]." *Matter of Culmer,* 25 B.R. 621, 624 (Bankr.S.D.N.Y.1982).

istration of such estate" consistent with the following factors: [21]

(1) just treatment of all holders of claims against or interests in such estate;

(2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;

(3) prevention of preferential or fraudulent dispositions of property of such estate;

(4) distribution of proceeds of such estate substantially in accordance with the order prescribed by this title;

(5) comity; and

(6) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns.

11 U.S.C. § 304(c).

These factors are

guidelines ... designed to give the court maximum flexibility in handling ancillary cases. Principles of international comity and respect for the judgments and laws of other nations suggest that the court be permitted to make the appropriate orders under all of the circumstances of each case, rather than being provided with inflexible rules.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 324–325 (1977), S.Rep. No. 95–989, 95th Cong., 2nd Sess. 35 (1978), U.S.Code Cong. & Admin.News 1978, p. 5821.

■ In determining whether to defer to and supplement the Japanese proceeding, the issue is not necessarily whether a reorganiza-

tion is possible under Japanese law. Rather, under Section 304(c), this Court should determine whether creditors will be justly treated and protected from prejudice. *In re Spanish Cay Co., Ltd.,* 161 B.R. 715, 726 (Bankr.S.D.Fla.1993).

At the outset, it should be noted that the Bankruptcy Law of Japan provides that

[a]n alien or foreign corporation shall have the same status as a Japanese national or Japanese corporation in regard to bankruptcy, provided however, that this shall apply only when Japanese nationals or Japanese corporations have the same status under the native laws of the alien or the foreign corporation.

Article 2, Bankruptcy Law of Japan (1991).

Implicit and explicit in the Bankruptcy Law of Japan is fair and equal treatment for foreign parties in a Japanese case. Due regard for the rights of the Japanese creditors in the Japanese proceeding necessarily must be afforded by this Court; the Respondents may, likewise, expect to be treated fairly in the foreign proceeding.

■ In Japan, the bankruptcy estate is similarly composed as are those instituted in this country.[22] Certain enumerated debts are excluded from discharge.[23] Executory contracts are subject to acceptance or rejection at the discretion of the administrator.[24] The estate may be augmented by recoveries resulting from avoidance actions.[25] For example, the Bankruptcy Law of Japan has provisions specifically germane to the instant facts,

---

**21.** *But see, In re Taylor,* 176 B.R. 903 (Bankr. C.D.Cal.1995) (a court is not required to look to the factors in determining whether to grant relief in an ancillary case—rather, once it is determined that the petition was filed by a foreign representative in a foreign proceeding, the court's inquiry is done and it essentially has no discretion to not accept the petition—§ 304(a) does not reference § 304(c)). This view, i.e. an unqualified and unlimited *carte blanche* **right** to initiate an ancillary proceeding, appears to be a minority view and is not supported by legislative history. Moreover, this Court does **not** interpret Section 304 as does the Court in *Taylor.* Rather, this Court concludes that subsection (a) is **not** completely and unqualifiedly separate from and independent of subsections (b) and (c). Subsection (b) expressly provides that the court may

grant relief available in subsection (b) **only if no opposition, or objection, is filed to the "petition", or if the objection is determined to be not well founded or not persuasive.**

**22.** *See,* Article 6, Bankruptcy Law of Japan (1991).

**23.** *See,* Article 366–12, Bankruptcy law of Japan (1991).

**24.** *See,* Articles 59 and 60, Bankruptcy Law of Japan (1991).

**25.** *See,* Articles 76 (procedure), 77 (goal of such actions), 84 (one-year reach back), and 85 (statute of limitations), Bankruptcy Law of Japan (1991).

[t]he following acts may be avoided in favor of the bankrupt estate:

(1) Any act done by the bankrupt with the knowledge that it would prejudice creditors in bankruptcy; provided however, that this shall not apply in cases where the person benefited by the act did not know at the time of the act the facts that it would prejudice creditors in bankruptcy;

(2) Any act relative to furnishing of securities or extinction of obligations, and any other act prejudicial to creditors in bankruptcy, done by the bankrupt subsequent to suspension of payment or after petition for bankruptcy has been filed; provided however, that this shall apply only in cases where the person benefitted by the act knew at the time of the act that there had been suspension of payment or that petition for bankruptcy had been filed.

Article 72(1), (2), Bankruptcy Law of Japan (1991).

The Bankruptcy Law of Japan also provides for the treatment and payment of claims that is similar to the U.S. system. The court sends out notice to creditors requesting that they file proofs of claim.[26] The trustee receives copies of the proofs of claim that are filed and, after an analysis, either approves of or objects to the claims.[27] All unsecured,[28] preferred,[29] and administrative[30] creditors are treated equally, in their respective classes, under the Japanese bankruptcy law and paid pro rata in the event that there are insufficient assets to satisfy the claims fully.

After reviewing the Japanese bankruptcy law,[31] this Court finds it appropriate to consider the granting of relief under Section 304 in an effort to best assure an economical and expeditious administration of Grandote's estate.

It is not necessary that the [Japanese bankruptcy law] be a carbon copy of the Bankruptcy Code; rather, it must be of a nature that it is not repugnant to the American laws and policies. . . .

*Gee, supra,* at 904.

Clearly, the Japanese bankruptcy law is neither contradictory nor "repugnant" to the laws and policies of this country. Indeed it is consonant with and complementary to the principal features which govern the United States' Bankruptcy Code.

Under Section 304(c)(3), this court may consider whether allowing this ancillary proceeding to go forward in this jurisdiction could address the alleged fraudulent, or perhaps preferential, disposition of property of the Japanese estate.[32]

In the instant case, based on the evidence thus far presented, there appears to be little doubt that the May 2, 1994 transfer of the golf course by Grandote to the LLC, via the LLC Deed, may be void, or at least voidable.[33] *See,* 11 U.S.C. §§ 363(b), 548, 549(a),

---

**26.** *See,* Articles 142(1) and 228, Bankruptcy Law of Japan (1991).

**27.** *See,* Articles 229 and 240, Bankruptcy Law of Japan (1991).

**28.** *See,* Articles 256 through 289, Bankruptcy Law of Japan (1991).

**29.** *See,* Articles 39 and 40, Bankruptcy Law of Japan (1991).

**30.** *See,* Articles 47, 50 (paid first), and 51, Bankruptcy Law of Japan (1991).

**31.** When a party does business with a company from a different nation, that person implicitly accepts the rules of the foreign forum. *Canada Southern Railway Co. v. Gebhard,* 109 U.S. 527, 3 S.Ct. 363, 27 L.Ed. 1020 (1883).

**32.** This Court does not read Section 304(c)(3) so narrowly as to eliminate consideration of the possibility of **recovering** property that is either preferentially or fraudulently transferred pre-petition, as the Respondents urge.

**33.** As to the facts of the golf course transfer (i.e., a Chapter 11 post-petition transfer from Debtor-in-Possession's estate) all the parties are in substantial agreement. However, the Respondents argue, in contravention of the foregoing theory, that the dismissal of the involuntary case—after the conveyance of Grandote's property during the prior Chapter 11—somehow renders the transfer proper, or the title problem moot. This Court disagrees. Moreover, the Respondents state that an identical deed was executed between Mr. Hashimoto and the LLC because Mr. Hashimoto was, in the eyes of the Respondents, possibly the alter ego of Grandote. The Hashimoto Deed, the Respondents argue, was acquired simply out of an alleged overabundance of caution. This Court has not been presented with

550. *See, also,* footnote 36, *infra.* This would revest title to the golf course in Grandote. Grandote, through Mr. Kojima, possesses at least a colorable claim to title to the golf course, which claim can subsequently and more fully be presented and determined in the appropriate forum.[34]

This Court determines that, at least, a colorable claim for a fraudulent transfer, an unauthorized post-petition transfer, or an otherwise improper and avoidable transfer, has been shown by a preponderance of the evidence, under either Japanese bankruptcy law[35] or Colorado state law,[36] and that the dispute should be resolved by a court in the United States.[37] Section 304(c)(3), for example, can encompass not just actions to prevent future conveyances, but also actions to recover property for a bankruptcy estate. *See, generally, Rashi Textiles, U.S.A., Inc. v. Rhomberg Textil Gesellschaft M.B.H., of*

*Austria,* 857 F.Supp. 1051, 1056–57 (S.D.N.Y. 1994) (Court deferred to a foreign proceeding due to notions of the fairness of the foreign proceeding, comity, and the vicissitudes of doing business with foreign entities. The foreign proceeding would protect the creditor's claim and would afford him due process of law.).

This Court concludes that allowing the commencement of the ancillary proceeding and rejecting the Respondents' opposition is fully justified under the circumstances. The relief available pursuant to Section 304(b) and the factors, or guidelines, controlling the Court's decisions in Section 304(c) strongly support granting the Japanese Administrator's Petition. Subsections (1) (just treatment), (3) (prevention of fraudulent dispositions, (4) (order of distribution), and (5) (notions of comity[38]) lend particular support to this decision.

evidence regarding whether or not Mr. Hashimoto indeed treated Grandote as his alter ego, however, this allegation need not be resolved here and does not affect the conclusion reached herein.

34. This Court cannot and does not here decide the questions of whether there was a fraudulent transfer, an avoidable post-petition transfer, a forgery and/or a lack of consideration, although at least a colorable claim appears to have been presented. So, too, the exact source, nature, and extent of the authority of Mr. Kojima in this ancillary proceeding, and the applicable law and avenue by which he can effectively seek to recover the golf course is not here decided.

35. "Early authority suggested Bankruptcy Court's [sic] have discretion to authorize utilization of the avoiding powers under the Code in a § 304 ancillary proceeding. [citations omitted] However, later cases and the commentators have concluded that the avoiding powers under the Code are not available in an ancillary proceeding. [citations omitted]." *Matter of Axona International Credit & Commerce Ltd.,* 88 B.R. 597, 607 n. 17 (Bankr.S.D.N.Y.1988), *aff'd,* 115 B.R. 442 (S.D.N.Y.1990), *appeal dismissed,* 924 F.2d 31 (2d Cir.1991). *Accord, In re A. Tarricone, Inc.,* 80 B.R. 21, 23 (Bankr.S.D.N.Y.1987) (a foreign representative may not invoke §§ 547 and 548 "for the simple reason that he is not a trustee in bankruptcy appointed under the Bankruptcy Code.... 'Had Congress desired to vest a foreign representative with those domestic powers, it would have done so directly.'") (quoting *Friedrich–Wilhelm Metzeler, as Trustee in Bankruptcy for Uni–Petrol Geselleschaft fuer*

*Mineralolprodukte m.b.H. a German limited liability company v. Bouchard Transportation Co., Inc.,* 78 B.R. 674, 677 (Bankr.S.D.N.Y.1987).

36. A "basic tenet of international law [is] that real property should be governed by the laws of the country in which the property is located." *In re Spanish Cay Co., Ltd.,* 161 B.R. 715, 725 (Bankr.S.D.Fla.1993). *See also, In re Lines,* 81 B.R. 267, 271 (Bankr.S.D.N.Y.1988). Moreover, the Sale and Purchase Agreement provided for Colorado law to govern the transaction. *See,* Exhibits E and 3, at pg. 22, ¶ 37.

37. At the hearing on this matter, an attorney for the Respondents agreed that a court in the United States should resolve this dispute, even if it is ultimately determined to be frivolous, except that the Respondents continue to contest the jurisdiction of both the U.S. District Court in other pending litigation or the Bankruptcy Court. Section 109(a) is cited by the Respondents as denying this Court jurisdiction over this matter. Section 109, however, deals with what constitutes a debtor for purposes of cases filed in this District and does not relate to ancillary proceedings at all.

38. Comity has historically been defined as "[n]either a matter of absolute obligation on the one hand, nor a mere courtesy or goodwill, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." *Hilton v. Guyot,* 159 U.S. 113, 164, 16

The Respondents finally, argue that, since there is, ostensibly, little or no value remaining in the golf course beyond the Resolution Trust's note and the tax claims, there is truly nothing to be gained by and, hence, no need for this ancillary case. This Court is not the proper party to make that decision; neither can it impose value judgments or make strategic decisions for the Japanese trustee, Mr. Kojima. Mr. Kojima is free, subject to the direction and approval of the courts, to, among other actions, pursue assets, despite any perceived lack of economic benefit to the estate he represents. Whether or not this Court, the Respondents, or any other party to this action would themselves pursue a claim under these circumstances is irrelevant.[39]

## IV. *Conclusion.*

This Court determines that under either the "majority view," represented by the *Spanish Cay* case, whereby this Court is required to examine the factors set forth in Section 304(c), or the new "minority view," represented by the *Taylor* case, the Petition must be granted.

Accordingly, it is

ORDERED that the Motion to Dismiss filed by the Respondents on December 1, 1994 is DENIED; and it is

FURTHER ORDERED that the Petition in a Case Ancillary to a Foreign Proceeding filed by Hideki Kojima, as trustee of the estate of the Grandote Country Club Co., Ltd., on October 25, 1994 is GRANTED; and it is

FURTHER ORDERED that Hideki Kojima, as trustee of the estate of the Grandote Country Club Co., Ltd., is granted relief as follows:

1. to pursue fraudulent or preferential transfer claims, if any;

2. to pursue a declaratory judgment as to the relative rights, title, and interests in the subject property (the golf course);

3. to pursue other litigation to establish the rights and claims of creditors in property of the estate;

4. to pursue other claims as may exist, under the province of Rule 7001(1), (2), (3), (7), (8), and/or (9), Fed.R.Bankr.P.; and

5. To seek such other relief as may be appropriate.

S.Ct. 139, 143 (1895). "Comity is to be accorded a decision of a foreign court as long as that court is of competent jurisdiction and as long as the laws and public policy of the forum state are not violated." *Culmer, supra,* at 629 (cases cited). Acts of foreign governments which are consistent with United States law and policy may not be reviewed by court of the United States. *Pravin Banker Associates, Ltd. v. Banco Popular del Peru,* 165 B.R. 379, 387 (S.D.N.Y.1994).

**39.** However, the evidence thus far provided suggests a likelihood of substantial value in the golf course for the Japanese bankruptcy estate.