F I L E D
United States Court of Appeals
Tenth Circuit

JUN 14 2001

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

In re: GRANDOTE COUNTRY CLUB
COMPANY, LTD., debtor in a foreign
proceeding,

　　　　Debtor.

----------------------------------------

HIDEKI KOJIMA, foreign
representative for the estate of
Grandote Country Club Company,
Ltd.; MOUNTAIN INVESTMENT
CORPORATION,

　　　　Plaintiffs - Appellants,

　v.

GRANDOTE INTERNATIONAL
LIMITED LIABILITY COMPANY;
SHIRLEY ZUBAL, in her official
capacity as the Treasurer for Huerfano
County, Colorado; RTV LLC, a
Colorado Limited Liability Company;
DWIGHT A. HARRISON; PAUL D.
HARRISON; RESOLUTION TRUST
CORPORATION, as Receiver for First
Federal Savings and Loan Association
of Estherville and Emmetsburg;
SHIRLEY ZUBAL, in her official
capacity as the Public Trustee of

No. 99-1127

Huerfano County, Colorado;
TSUKASA YOSHII, also known as
Duke Yoshii; KOICHI HASHIMOTO;
INTERNAL REVENUE SERVICE;
WAHATOYAS, LLC,

        Defendants - Appellees.

---

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 95-B-1863)**

---

Submitted on the briefs.

Brian P. Halloran, Connolly, Halloran & Lofstedt, PC, Louisville, Colorado, for Plaintiffs-Appellants.

Laura B. Redstone, Ballard, Spahr, Andrews & Ingersoll, LLP, Fredric J. Lewis, Senn, Lewis & Visciano, PC, and Harry L. Simon, Denver, Colorado, for Defendants-Appellees.

Dwight A. Harrison and Paul D. Harrison, *pro se*.

---

Before **SEYMOUR**, **McKAY**, and **LUCERO**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

---

     Plaintiff-appellant Hideki Kojima, trustee for a Japanese entity involved in

bankruptcy proceedings in Japan, seeks to gain title to a golf course located in La

Veta, Colorado, referred to by the parties as "the property."[1]  To do so, Kojima attacks the validity of a transfer of ownership of the golf course, claiming it should be set aside under Japanese bankruptcy law and was fraudulent, as well as a subsequent tax sale—arguing it was invalid under the Colorado Uniform Fraudulent Transfer Act, Colo. Rev. Stat. §§ 38-8-101 to 38-8-112 ("CUFTA"). We affirm the district court's grant of summary judgment.

## I

This case has a tortuous procedural history.  For the sake of brevity, we need not discuss in great detail all of the hearings, motions, and proceedings in state, bankruptcy, and federal district courts relating to the golf course.  Plaintiff-appellant Kojima is the trustee in a Japanese bankruptcy proceeding concerning Grandote Country Club, Ltd. ("Grandote Japan").[2]  Originally the property was owned by Grandote International L.L.C., Dwight Harrison, and Paul Harrison (collectively "Grandote Colorado").  Grandote Colorado failed to pay Colorado taxes on the property; in November 1990, the Huerfano County Treasurer offered for sale tax liens encumbering the property.  Because no one bought the tax liens, tax certificates encumbering the property were "struck off" to the county.

---

[1]  This golf course spawned a great deal of litigation, including related appeals in this Court.  Harrison v. Wahatoyas, L.L.C., Nos. 99-1319, 99-1390 (10th Cir. 2001).

[2]  Kojima has agreed to sell whatever interest he gains in this litigation to appellant Mountain Investment Corp.

In March–June 1991, Dwight Harrison sold most of the property to a Japanese citizen, Koichi Hashimoto, but retained some interests for himself. That sale included an acknowledgment that taxes on the property were delinquent. In February 1993, Hashimoto conveyed the property to Grandote Japan, still subject to the unpaid tax liens.

Dwight Harrison filed for bankruptcy in December 1993 in an apparent effort to forestall foreclosure on a loan currently held by defendant-appellee Wahatoyas LLC. That proceeding was dismissed on May 31, 1994. On May 2, 1994, just before the bankruptcy action was dismissed, Grandote Japan conveyed the property back to Grandote Colorado ("the Japan to Colorado transfer"). Kojima contends the Japan to Colorado transfer was fraudulent.

On July 8, 1994, Wahatoyas purchased the tax certificates for the property pursuant to a tax sale. Wahatoyas then paid all outstanding taxes, interest, and costs and, in October 1994, transferred the tax certificates to defendant-appellee RTV LLC. That same month, RTV applied for issuance of treasurer's deeds ("the Tax Deeds") to the property. (The three-year statutory period for issuance of the Tax Deeds had just expired.) The county treasurer then issued initial notice of RTV's application for the Tax Deeds pursuant to Colorado statutes and, after much litigation, issued the Tax Deeds to RTV in May 1995. Armed with the Tax Deeds, in June 1995 RTV brought a forcible entry and detainer action in Colorado

-4-

state court to gain possession of the property. RTV prevailed in that action, with the state court finding that the Tax Deeds were valid and awarding RTV possession, a ruling affirmed by the Colorado Court of Appeals. RTV, L.L.C. v. Grandote Int'l L.L.C., 937 P.2d 768, 770 (Colo. Ct. App. 1996).

Meanwhile, Grandote Japan declared bankruptcy in Japan in July 1994. Kojima, as trustee for Grandote Japan, filed various legal actions seeking to prevent the issuance of the Tax Deeds to RTV, which were obviously unsuccessful. See id. Notably, Kojima filed an ancillary proceeding in bankruptcy court under 11 U.S.C. § 304. The outcome of that proceeding was an order authorizing Kojima to pursue whatever litigation he wished to establish his rights and claims in the property. In re Kojima, 177 B.R. 696, 704 (Bankr. D. Colo. 1995).

As a result of that order, Kojima brought this suit, seeking to avoid the Japan to Colorado transfer and the issuance of the Tax Deeds to RTV. The district court granted summary judgment in favor of defendants, concluding that Japanese law did not apply to this case, that the Tax Deeds were properly issued, and that there was no evidence of fraudulent transfer.

**II**

At the time this appeal was filed, we questioned whether the district court's judgment was a final, appealable order because it dismissed some of Kojima's

claims without prejudice.  See Heimann v. Snead , 133 F.3d 767 (10th Cir. 1998). The district court subsequently amended its judgment to dismiss all claims with prejudice, and thus there is no longer any doubt that the judgment is appealable and that we have jurisdiction under 28 U.S.C. § 1291.

### III

"We review the grant or denial of summary judgment de novo, applying the same legal standard used by the district court . . . ." Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996) (citation omitted).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In reviewing a summary judgment motion, the court is to view the record "in the light most favorable to the nonmoving party." Thournir v. Meyer, 909 F.2d 408, 409 (10th Cir. 1990) (citation omitted).  The purpose of a summary judgment motion, unlike that of a motion to dismiss, is to determine whether there is evidence to support a party's factual claims. Unsupported conclusory allegations thus do not create a genuine issue of fact. See United States v. Simons, 129 F.3d 1386, 1388–89 (10th Cir. 1997) (citing Allen v. Muskogee, Okla., 119 F.3d 837, 843–44 (10th Cir. 1997)).  To withstand summary judgment, the nonmoving party "must come forward with 'specific facts

showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).

## A. Choice of Law

Kojima brought this action as an ancillary proceeding under 11 U.S.C. § 304[3] pursuant to an order of the bankruptcy court granting Kojima permission to pursue its claims in federal court. See Kojima, 177 B.R. at 704. The bankruptcy judge's opinion discussed, but did not determine, whether Japanese law should be applied to Kojima's claims. Id. at 699–703. At summary judgment, the district court rejected use of Japanese law. Kojima argues that Japanese law should apply and that under Japanese law the Japan to Colorado transfer is avoidable.

Section 304 allows proceedings to be brought in the United States "to function in aid of a [bankruptcy] proceeding pending in a foreign court." Id. at 700 (citation omitted). Applying principles of "comity," such proceedings may utilize foreign law to recover property located in the United States when application of foreign law will "best assure an economical and expeditious administration" of the bankruptcy estate. 11 U.S.C. § 304(c).

In determining whether to apply Japanese law, we discern two competing values. On one hand are principles of comity, which favor application of

---

[3] Judge Brooks discussed the nature and purposes of § 304 ancillary proceedings in his thorough opinion. See Kojima, 177 B.R. at 699–701.

Japanese law. On the other are the interests of the locality where the property is located, which favor application of United States/Colorado law. In support of comity and applying Japanese law, Kojima cites Philadelphia Gear Corp. v. Philadelphia Gear de Mexico, S.A., 44 F.3d 187 (3d Cir. 1994). In that case, the Third Circuit announced a policy favoring application of a foreign state's laws:

> In general, "[u]nder the principle of international comity, a domestic court normally will give effect to executive, legislative, and judicial acts of a foreign nation." More specifically, we have stated that "[c]omity should be withheld only when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect."

Id. at 191 (citations omitted); see also In re Hourani, 180 B.R. 58, 64 (Bankr. S.D.N.Y. 1995) ("[T]his nation's preparedness to grant deference to the laws and proceedings of other nations is considerable."). The bankruptcy judge's analysis in the earlier ancillary proceeding in this case also lends support to Kojima's argument. He concluded that Japanese bankruptcy law is "consonant with and complementary to the principal features which govern the United States' Bankruptcy Code." Kojima, 177 B.R. at 702.

Despite these arguments for applying Japanese law, we agree with the district court that under the facts of this case, Colorado law is the appropriate law to apply in resolving Kojima's claims. Most importantly, the fact that the only asset at issue is real property favors application of local law. A Second Circuit

opinion explains why local law should be applied to resolve disputes involving real property.

> Property interests have an independent legal source, antecedent to the distributive rules of bankruptcy administration, that determines in the first instance the interests of claimant parties in particular property. It logically follows that before a particular property may be turned over pursuant to § 304(b)(2), a bankruptcy court should apply local law to determine whether the debtor has a valid ownership interest in that property when the issue is properly posed by an adverse claimant.

In Re Koreag, Controle et Revision S.A., 961 F.2d 341, 349 (2d Cir. 1992); see also In re Spanish Cay Co., 161 B.R. 715, 725 (Bankr. S.D. Fla. 1993) ("[A] basic tenet of international law [is that] real property should be governed by the laws of the country in which the property is located.").

Moreover, both federal and state choice of law principles favor application of the "law of the jurisdiction having the greatest interest in the litigation," In Re Koreag, 961 F.2d at 350, or the law of the jurisdiction with the "most significant relationship" to the transaction at issue, Wood Bros. Homes, Inc. v. Walker Adjustment Bureau, 601 P.2d 1369, 1372 (Colo. 1979). Without question, Colorado has the greatest interest in the litigation: the property is located in Colorado, the tax sale was conducted for failure to pay Colorado taxes, most of the agreements related to the property were executed in Colorado, and there has been extensive litigation in Colorado courts to determine the owner of the property. See, e.g., RTV, 937 P.2d at 768.

## B. The Colorado Uniform Fraudulent Transfer Act ("CUFTA")

Kojima seeks to avoid the transfer of the property pursuant to the Tax Deeds, claiming that their issuance to RTV violates CUFTA. Kojima's brief on this point is, to put it delicately, opaque; Kojima seems to argue that the transfer by Tax Deeds violates CUFTA merely because it constitutes a transfer made by a "debtor" (i.e., Grandote Colorado) at a time a "creditor" (i.e., Kojima) had a claim to the property. (Appellants' Br. at 17 (citing Colo. Rev. Stat. §§ 38-8-105, 38-8-106).) To run afoul of CUFTA, a transfer must involve "actual intent to hinder, delay, or defraud any creditor" or must have been made for less than "reasonably equivalent value." Colo. Rev. Stat. § 38-8-105(1)(a), (b). Although never directly stating this, Kojima appears to rely on both grounds.

No matter its exact form, Kojima's argument is premised on the theory that the transfer of the property by the Tax Deeds was made from <u>Grandote Colorado</u> to RTV. We rejected that theory in <u>Weinman v. Simons (In re Slack-Horner Foundries Co.)</u>, 971 F.2d 577, 580 (10th Cir. 1992). <u>Weinman</u> held that "[t]he failure to pay taxes due results in a forfeiture of the original owner's interest in the property, by operation of law, to the <u>state</u>, which then grants title to the property to the holder of the lien <u>free and clear of any other claims</u>." <u>Id.</u> at 581 (emphasis added). Indeed, Colorado law is settled, acquisition of real property by tax deeds provides

-10-

virgin title to the property, erasing all former interest in the land
. . . . [A] tax title from its very nature has nothing to do with the
previous chain of title and does not in any way connect itself with it.
It breaks up all previous titles. . . . By whatever means [Grandote
Japan and Kojima] claimed to have acquired the land, they lost it
when a treasurer's deed issued in accordance with the law.

Hartley v. Ruybal, 414 P.2d 114, 117 (Colo. 1966);[4] see also Harrison v. Everett,

308 P.2d 216, 219 (Colo. 1957) ("The issuance of a valid treasurer's deed created

a virgin title erasing all former interests in the land."). Under Weinman and

Hartley, the Tax Deeds transfer was made by the state of Colorado (free of all

prior interests), not by Grandote Colorado, and thus there was no transfer by a

"debtor," which is required to violate CUFTA.

Kojima seeks to distinguish Weinman on the ground that the case was

decided under a federal bankruptcy statute, 11 U.S.C. § 548, rather than CUFTA.

However, the language of § 548 and the relevant portions of CUFTA are quite

similar. Compare 11 U.S.C. § 548(a)(1)(A), (B) (stating that a trustee may avoid

transfers made "with actual intent to hinder, delay, or defraud" or for which the

debtor "received less than a reasonably equivalent value"), with Colo. Rev. Stat.

§ 38-8-105(1)(a), (b) (stating that a transfer is fraudulent if it was made "[w]ith

actual intent to hinder, delay, or defraud any creditor" or if the debtor received

_____

   [4] Hartley's holding is premised on the validity of the tax deeds themselves.
In prior litigation, the Colorado Court of Appeals upheld the validity of the Tax
Deeds, concluding that RTV held proper title. See RTV, 937 P.2d at 770.

less than "reasonably equivalent value"). Because this language is nearly identical, the holding of Weinman logically applies to the situation in this case.

Kojima's CUFTA claim fails for another reason. A transfer is not fraudulent under CUFTA where an asset is acquired for "a reasonably equivalent value" through a "regularly conducted, non-collusive sale, foreclosing on assets subject to a lien." Colo. Rev. Stat. § 38-8-104(2). In BFP v. Resolution Trust Corp., 511 U.S. 531, 545 (1994), the Supreme Court held that a mortgage foreclosure sale constitutes a transfer for "reasonably equivalent value," even if the purchase price was below market value, as long as there is no evidence of collusion. Although BFP did not address a tax sale, see id. at 537 n.3, which is how the property in this case was transferred, BFP has been extended to the tax sale context. See, e.g., T.F. Stone Co. v. Harper (In re T.F. Stone Co.), 72 F.3d 466, 468–69 (5th Cir. 1995); Russell-Polk v. Bradley (In re Russell-Polk), 200 B.R. 218, 220–22 (Bankr. E.D. Mo. 1996); Golden v. Mercer County Tax Claim Bureau (In re Golden), 190 B.R. 52, 58 (Bankr. W.D. Pa. 1995); Hollar v. Myers (In re Hollar), 184 B.R. 243, 252 (Bankr. M.D.N.C. 1995); Lord v. Neumann (In re Lord), 179 B.R. 429, 432–35 (Bankr. E.D. Pa. 1995); McGrath v. Simon (In re McGrath), 170 B.R. 78, 82 (Bankr. D.N.J. 1994).

We are aware that courts have not been unanimous in extending BFP to the tax sale context, with this circuit's Bankruptcy Appellate Panel among those

refusing to apply BFP to a transfer made by a tax sale. See Sherman v. Rose (In re Sherman), 223 B.R. 555, 558–59 (B.A.P. 10th Cir. 1998). Nevertheless, the decisive factor in determining whether a transfer pursuant to a tax sale constitutes "reasonably equivalent value" is a state's procedure for tax sales, in particular, statutes requiring that tax sales take place publicly under a competitive bidding procedure. See id. at 559 (refusing to extend BFP to a tax sale conducted under Wyoming statutes that "do not permit a public sale with competitive bidding"). RTV acquired the property through a regularly conducted tax sale under Colorado law subject to a competitive bidding procedure. See Colo. Rev. Stat. §§ 39-11-101, 39-11-108. Kojima has not alleged that the tax sale in this case was conducted in violation of Colorado law. We thus conclude that the tax sale at issue constitutes transfer for "reasonably equivalent value" under CUFTA.

## C. Fraud

Kojima argues that the Japan to Colorado transfer was fraudulent because the only person with authority to execute the conveyance, Noriyuki Hoshi, did not do so. In response to this claim, Grandote Colorado submitted an affidavit from Dwight Harrison in which he recited the events surrounding the conveyance:

> 10. After considerable communication between Hashimoto and me I met Hashimoto in Japan and we entered into [a] memorandum on May 2, 1994. The memorandum correctly states the purpose of the conveyance of the property to Grandote [Colorado]. Also present during the meeting were Defendant Duke Yoshii (the interpreter) and Noriyuki Hoshi who was introduced to me as the person with

-13-

authority to execute the deed referred to in the memorandum.

11.  Immediately after signing the memorandum, Hashimoto, Yoshii, Hoshi and I traveled to the U.S. Consulate in Fukuoka, Japan to accomplish the execution of the deed conveying the property to Grandote [Colorado].

12.  At the Consulate we were ushered into a large conference room where we were introduced to Donald Y. Yamamoto Counsel for the United States.  Mr. Yamamoto was known to Yoshii who introduced us and explained the purpose of our meeting to Mr. Yamamoto.  Mr. Yamamoto asked for identification.  I saw Hoshi give Mr. Yamamoto his passport and recognized it as a Japanese passport but did not personally compare the passport picture with Hoshi's face.  Mr. Yamamoto examined Hoshi's passport.  We then proceeded to a table to sign the deeds.  Hoshi said that his first name had been misspelled on the prepared deed and asked Mr. Yamamoto to correct it, which Mr. Yamamoto himself did on a typewriter.  The deeds were signed and notarized by Mr. Yamamoto.

(Appellant's App. at 36–37.)

The district court concluded that in light of this affidavit there was no genuine dispute of material fact because Kojima presented no evidence other than the allegations in his complaint.  Kojima argues that his complaint is verified, and "[v]erification of a complaint converts [it] . . . to an affidavit suitable for use in opposing a motion for summary judgment."  (Appellant's Reply Br. at 10.) Although a verified complaint may have evidentiary value, this is only true "if the facts asserted are within the pleader's personal knowledge." Jaxon v. Circle K Corp., 773 F.2d 1138, 1139 n.1 (10th Cir. 1985).  Kojima's complaint, which is verified only by Kojima himself, contains only a hearsay allegation regarding

-14-

Hoshi's identity: "Mr. Hoshi confirms that he did not execute the General Warranty Deed."  (Appellant's App. at 251 ¶ 110.)  Because Kojima never submitted any non-hearsay evidence controverting Harrison's affidavit, the district court was correct to rule that Kojima failed to support his allegation with "competent Rule 56 evidence."  (<u>Id.</u> at 37.)

**IV**

The judgment of the district court is **AFFIRMED**.