No. 15,852.

BENNETT *v.* SHOTWELL.
(194 P. [2d] 335)

Decided May 10, 1948.

Mr. CLARENCE L. BARTHOLIC, for plaintiff in error.

Mr. I. L. QUIAT, Mr. JULIUS F. SEEMAN, for defendant in error.

Mr. J. GLENN DONALDSON, Mr. MALCOLM LINDSAY, Mr. ABE L. HOFFMAN, amici curiae.

*In Department.*

MR. JUSTICE ALTER delivered the opinion of the court.

L. D. SHOTWELL, JR., brought an action in the district court against Jessie F. Bennett and numerous other defendants to quiet title to certain vacant lots in Bonnie Brae addition to Denver. All defendants except Jessie F. Bennett permitted judgment to be entered by default. Upon trial the court entered its judgment in favor of Shotwell and against Bennett, to reverse which she brings the case here by writ of error.

We will refer to the parties herein as plaintiff and defendant as they appeared in the trial court.

The complaint contains the usual allegations of ownership in plaintiff and possession of certain lots in Bonnie Brae addition based upon treasurer's deeds, and that defendants claim some right, title and interest therein, but which claims, as is alleged, are of "no effect, groundless, illegal and invalid, and that the claims of said defendants and each of them create a cloud upon the title of plaintiff and are adverse to the title of the plaintiff." Plaintiff sought a complete adjudication of the rights of all of the parties to the litigation and a decree quieting title in him.

In defendant's answer there is an allegation denying plaintiff's ownership, and in the cross complaint there is an allegation of ownership in defendant.

In the City and County of Denver the board of equalization is authorized to perform the duties of boards of county commissioners of counties, and for convenience we shall hereinafter refer to that board as the board of county commissioners.

The various objections to plaintiff's treasurer's deeds, all as alleged in defendant's answer or cross complaint, will appear hereinafter in the discussion of the specifications of points which are argued and presented by defendant under five subdivisions, but four of which we deem it necessary to consider.

The record discloses that the twelve treasurer's deeds in question are based upon a sale of one or more lots in Bonnie Brae addition to the City and County of Denver for delinquent general and special taxes, and an assignment of the certificates of purchase by Denver to the plaintiff herein who thereafter applied for, and received, treasurer's deeds. The certificates of purchase were founded upon tax sales as herein indicated: 1. Three treasurer's deeds were based on the tax sale of 1928 for delinquent 1927 taxes. 2. Three treasurer's deeds were based on the tax sale of 1929 for delinquent 1928 taxes.

3. Two treasurer's deeds were based on the tax sale of 1931 for delinquent 1930 taxes. 4. Two treasurer's deeds were based on the tax sale of 1932 for delinquent 1931 taxes. 5. One treasurer's deed was based on the tax sale of 1935 for delinquent 1934 taxes. 6. One treasurer's deed was based on the tax sale of 1938 for delinquent 1937 taxes.

The four points covered by defendant's specifications, and which are here argued and presented, are, the treasurer's deeds are void because: 1. The sales at which the certificates of purchase were issued by the county were not held in accordance with the statute. 2. They recite that the purchaser (plaintiff) has paid subsequent taxes on the property. 3. The board of county commissioners had no power to abate any tax without the approval of the state tax commission. 4. The board had no power to sell or dispose of certificates of purchase based upon delinquent special assessments at less than the face value or in bulk nor to a preferred purchaser.

■■ 1. It is recited in all of the deeds here in question that the sales at which the certificates of purchase were issued were conducted in substantial conformity with the requirements of the statutes, and, under the provisions of section 258, chapter 142, '35 C.S.A., these deeds are prima facie evidence in all courts of nine specified facts, among which is, "Ninth—That the sale was conducted in the manner required by law"; consequently, the treasurer's deeds are prima facie evidence that the sales were so conducted unless the recitals therein show to the contrary. The burden of nullifying treasurer's deeds is on the party contending for their invalidity. *White Cap Mining Co. v. Resurrection Mining Co.*, 115 Colo. 396, 174 P. (2d) 727.

Counsel for defendant bases his argument here upon the contention that the treasurer failed to comply with that provision of section 234, chapter 142, '35 C.S.A., in force at the time of the commencement of this action, which reads in part: "If there shall be no bid for any

tract offered, the treasurer shall pass it over for the time, and shall re-offer it at the beginning of the sale next day, until all the tracts are sold, or until the treasurer shall become satisfied that no more sales can be effected, when it shall become his duty to strike off to the * * * city and county, * * * the town lots remaining unsold, for the amount of such taxes, interest and cost thereon. When the county treasurer has so struck off any * * * town lots * * * to the * * * city and county, * * *, he shall issue to the * * * city and county, * * * a certificate of purchase as now provided by law."

■ It is counsel's contention that the treasurer failed to offer and reoffer the lots here in question in accordance with the mandate of the statute. The evidence as to the offer and reoffer of the properties is not entirely satisfactory. At most of these sales there were thousands of lots and parcels of property sold for delinquent taxes. A witness called by plaintiff testified that he had been with the tax department of the City and County of Denver from 1906 to the time of the trial, with the exception of four years, and that a part of this time, at least, he was in charge of tax sales. He further testified that all of the property listed as delinquent was offered three consecutive times; that the first time he read the list of property, the description and local description, and that on "the subsequent day they would reoffer it—read it if there was anybody there—often times there was nobody present at the sale, they would have some clerk read it off and stamp the date on the back of the sale slip, the date of the second offer." He also testified that invariably the property which was not sold on the first day was reoffered for sale on the second and subsequent days.

A witness called by defendant testified that he was chief clerk in the treasurer's office from 1928 to 1934 and that his duties were the collection of taxes, the holding of tax sales, and related business. He also testified that he conducted the tax sales from 1928 to 1934, in-

clusive; that sometimes in the early years of his employment the lots and parcels were offered and reoffered each day of the sale, and he further testified that during some of the later years of his employment he did not reoffer the property, on which there were no bids on the first day, on the following and subsequent days; however, he testified that the property upon which there was no bid on the first day of the sale was reoffered daily by a clerk in the office, and he himself, on the second and subsequent mornings of the sale, would inquire whether there were any bids for any of the parcels that were offered on the preceding day.

"The requirement of the statute is only that the treasurer shall reoffer the property the next day. It does not require the formal rereading of the notice of sale or legal description of the property. It's purpose is patent —to give reasonable opportunity for all so desiring to bid, and to make sure there were no bidders present before striking any property off to the county; and such only is its requirement. Where persons were present the deed is prima facie evidence that the requirement of the statute was observed. Where none was present, there could be no bidding and the treasurer's customary announcement to the vacant room at the proper time, that if there was nobody present the properties would be sold to the county, was unmistakable notice that he was ready to offer the property if a bidder was there. To require formal announcement and reading of the notice of sale and each property description with none present to hear or bid, is to require a vain and useless thing, and make of the law a ritual of sacred incantations rather than a rule of common sense.

"But if we shall agree, for the purpose of the argument, that such formal reading was necessary, we still have the prima facie proof from the recitals in the deed that this was done." *Colpitts v. Fastenau,* 117 Colo. 594, 192 P. (2d) 524.

We note, in fairness to defendant's counsel, that the

above case was decided after all briefs were filed in the instant case.

■ If there be a conflict in the testimony of these two witnesses, one for the plaintiff and one for the defendant, it became the duty of the trial court to determine which witness was the more worthy of credit and give credit accordingly. The trial court found that the allegations contained in plaintiff's complaint were true and that those in the defendant's answer and cross complaint were untrue; consequently, the trial court found that the property here involved was offered and reoffered in accordance with the provisions of the statute, and this finding being supported by competent evidence, will not be disturbed. The citation of authorities is unnecessary.

■ 2 and 4. Defendant contends that the deeds are void because it is recited therein "that the purchaser, L. D. Shotwell has paid the subsequent taxes on the property." This is not the provision of the statute, and is not a correct statement of the recitation in the deeds. The statement in the deeds is, "L. D. Shotwell, Jr. has paid subsequent taxes on said property in the amount of ..........................dollars and..........................cents," and in the blanks is inserted the exact amounts paid by Shotwell. It is not recited in the deeds that plaintiff has paid all of the taxes due on the property described therein subsequent to the date of the sale, and, as we interpret the statute, there is no requirement that this be done. Section 246, chapter 142, '35 C.S.A., provides for the payment of subsequent taxes by the holder of a tax certificate, and from a reading of the section it clearly appears that the right to pay subsequent taxes is permissive and not mandatory. This section has no application to the questions here presented. Section 247, chapter 142, '35 C.S.A., provides two methods by which one desiring to do so many purchase certificates of purchase. The first method permits the purchase of a certificate of purchase "upon payment to the treasurer of the amount for which

said property was bid in by the * * * city and county, * * * with interest and penalties accrued thereon from the date of the sale, together with the sum of one dollar for making such assignment, *also the taxes assessed thereon since the date of such sale."* Where one wishes to avail himself of this method of acquiring a certificate of purchase, the statute is specific and definite. It is complete in itself. Under this method there is no occasion to make application to, or even consult, the board of county commissioners with reference to the purchase. Section 247 provides another method by which one may acquire certificates of purchase, and this method is attractive to those who do not wish to give the full amount paid at the tax sale together with interest and penalties and all subsequent taxes. The second method provided by this section is through the board of county commissioners, and when one wishes to avail himself thereof, he applies to the board and purchases the certificates of purchase "for such sum as the board of county commissioners * * * at any regular or special meeting may decide and authorize by order duly entered in the recorded proceedings of such board." To make the authority of the board of county commissioners more definite and certain, and to clarify their position with reference to tax sale certificates, the legislature in 1935 enacted section 249, chapter 142, '35 C.S.A., wherein it is provided that where counties have in their possession or under their control certificates of purchase resulting from the sales of lands for the nonpayment of general taxes, the board of county commissioners is authorized to assign, sell or transfer these certificates of purchase *"in such manner, at such times, and on such terms"* as it may determine by resolution. Section 249, supra, was amended by Session Laws Colorado 1941, chapter 193, page 650, wherein it was provided that any county having in its possession or control certificates of purchase resulting from the nonpayment of general taxes might assign, sell or transfer such certificates "in such manner, at such

times, and on such terms as may be determined by resolution of the board of commissioners of such county" with exceptions therein not herein applicable. In using the second method set out in section 247, supra, there is no provision therein requiring the payment of subsequent taxes. We said in *Tarabino Real Estate Co. v. Dunlavy,* 105 Colo. 523, 99 P. (2d) 926: "A certificate for land struck off to the county for failure of bidders at the sale is issued by the treasurer to the county and subsequent taxes are indorsed thereon. Thereafter no taxes are payable until redemption or sale. '35 C.S.A., c. 142, §234. Such certificates may be sold by the treasurer for the amount for which the land was struck off to the county, with interest and penalties, or 'for such sum as the board of county commissioners * * * may decide and authorize.' Sec. 247, id."

In the instant case, with reference to the subsequent general taxes, the board of county commissioners provided by resolution that the assignment of the certificates of purchase for general taxes should be made upon the payment of one dollar and the current general taxes in full.

Defendant's counsel contends that we have many times determined that the payment of subsequent taxes is a condition precedent to obtaining a treasurer's deed, and in support of this contention has interpreted our decisions as requiring the payment of all taxes accruing subsequent to the issuance of certificates of purchase. In support of this position he cites *Henrie v. Greenlees,* 71 Colo. 528, 208 Pac. 468; *Carnahan v. Sieber Cattle Co.,* 34 Colo. 257, 82 Pac. 592; *Schneider v. Hurt,* 25 Colo. App. 335, 138 Pac. 422.

In *Henrie v. Greenlees, supra,* which was announced while chapter 140, S.L. 1913, was in force and effect and wherein the provisions with reference to the sale of certificates of purchase by the treasurer, were identical with those of section 247, supra, but in which the provision for the sale of certificates of purchase by the

board of county commissioners read, in case of a county, "for such sum as the board of county commissioners at any regular or special meeting may decide, * * * ". This quoted provision of the 1913 act was identical with section 5726, R.S. 1908. An examination of the record in *Henrie v. Greenlees, supra,* discloses that the date of the sale was December 23, 1914, on which date a certificate of purchase was issued. Endorsed thereon were the taxes for 1914, 1915, 1916, and 1917, which totaled $754.50. The board of county commissioners sold the certificate of purchase with subsequent taxes endorsed thereon for $375. In that case it was contended, and we held, that the subsequent taxes for 1914, 1915, 1916 and 1917 were paid, and the recitation in the treasurer's deed respecting payment was correct.

In *Carnahan v. Sieber Cattle Co., supra,* the question there involved the validity of an assignment of a certificate of purchase as affecting the validity of the deed issued thereon. We determined there that under the statute the assignment by the county clerk was invalid, and, consequently, the deed based upon that assigned certificate of purchase was void. The only other question involved was whether the tax deed, based upon an assignment by the county treasurer, was good, and with reference thereto we said: "This second tax deed [based upon the treasurer's assignment of the certificate of purchase] contained proper recitals of the assignment of the certificate by the county treasurer to the appellant, and that the latter had paid to the treasurer the amount for which the property was bid in by the county, together with the interest and penalties which had accrued thereon from the date of the sale to the date of assignment. There was no recital, however, expressly or by inference, that appellant had paid the taxes assessed on the land since the date of the sale, *or such sum as the county commissioners had fixed in lieu thereof to be paid in case of an assignment.*" (Italics ours)

The statute in force at the time this decision was

rendered (S. L. '02, c. 3, p. 132, §177) provided for a certificate of purchase to the county under certain conditions and authorized the assignment thereof by the treasurer upon the payment of the amount for which the property was bid in by the county with interest and penalties which had accrued thereon from the date of the sale together with one dollar for making the assignment and the taxes assessed on the property since the date of the sale "or for such sum as the board of county commissioners at any regular or special meeting may decide."

The italicized portion of the opinion directly authorizes the board of county commissioners to determine the amount which shall be paid by the purchaser of a certificate of purchase in lieu of the subsequent taxes.

In *Schneider v. Hurt, supra,* it is said: "The sole contention of plaintiff in error is that the relation existing between the lessor and the lessee, *under the lease in this case,* destroys the validity of the tax deed and the subsequent conveyance made by the lessee, who took the tax deed, to the other defendant."

It was held in reversing the judgment in the case: "Furthermore, the lessee as heretofore stated, did actually pay these subsequent taxes (paying the 1902 taxes after the tax deed was recorded), and took the tax deed before the lease expired, and claimed the property as his own. In so doing he violated the terms of the lease, and took advantage of such violation: (1) by paying the taxes for his own benefit and appropriating to his own use and becoming the beneficiary of such payments, and (2) by not paying the taxes for the lessor, as part of the consideration for the lease, thus defaulting in his payments thereupon and hiding such default from the lessor through his duplicity."

We do not believe this decision supports counsel for defendant in his contention here, and, as we construe the opinion, it is based entirely upon rights accruing be-

tween the parties thereto by reason of the terms of the lease entered into between them.

It is contended by counsel that the certificates of purchase issued on special improvement district assessments could not be sold or disposed of "at less than face value, nor in bulk, nor to a preferred purchaser."

■ ■ We take judicial notice of the charter of the City and County of Denver. Article 3, section 40, of said charter relates to the sale of property for nonpayment of special improvement district taxes and provides: "The treasurer * * * shall advertise and sell any and all real estate concerning which such default is suffered, and said sales and advertisements shall be made at the same time or times, in the same manner and under all the same conditions and penalties, and with the same effect as are provided by general law for the sales of real estate in default of payment of general taxes." As we construe this section of the charter, it clothes the board of county commissioners with the authority to dispose of certificates of purchase issued for nonpayment of special improvement district taxes in the same manner as it is authorized to dispose of certificates of purchase issued for the nonpayment of general taxes. If, as contended here, the application of the sum for which the certificates of purchase based upon general and special improvement delinquencies are sold is improperly apportioned by the treasurer, so as to deprive the state and school district of their just proportionate share of the amount realized from such sale, that is a matter which does not concern the owner of the property who is seeking to set aside a treasurer's deed based upon the certificates of purchase. This improper apportionment, if such exists, is a matter for action by the general public or those branches of government injured thereby.

■ ■ 3. The treasurer apportioned the amount realized from the sale of the certificates of purchase to the various branches of government interested in taxes, and also apportioned parts of the sum so realized, among

the special improvement districts. The amount realized from the sale of certificates of purchase fixed by the board of county commissioners was for an amount which the board determined as the full cash value of the property free and clear of tax liens of all descriptions and was considerably less than the amount of the taxes plus interest, penalties and fees. In the apportionment of the taxes, the evidence is that they were apportioned equally between the various governmental branches in ratio to the amount of the tax due each. On the face of the certificates of purchase the word "abate" occurs after some of the mentioned years subsequent to the date of the sale. It is contended that under the provisions of section 294, chapter 142, '35 C.S.A., this abatement could not be made without the approval of the Colorado Tax Commission. This section prohibits abatements, rebates and refunds of taxes by the board of county commissioners unless a hearing is had thereon and notice of such hearing and opportunity to be present is given the assessor. The clause concerning abatement, rebate and refund mentioned in the section requiring notice and opportunity to be present afforded the assessor, clearly indicates that the provision is for the benefit of an owner who complains concerning an alleged erroneous assessment of his property; otherwise the assessor would not be concerned with the abatement, rebate or refund, for he has nothing whatever to do with the collection of taxes. His duties pertain largely, if not exclusively, to the valuation and assessment of property. The fact that the treasurer or board of county commissioners in resolutions concerning the sale of certificates of purchase mark certain taxes as abated, under conditions as disclosed here, indicates that the tax for the years in question is cancelled or that no tax for these years is collected. The use of the word "abate" is unfortunate and does not add to or detract from the resolution of the board of county commissioners, nor does it invalidate a resolution which is in all other respects in accordance with the statute. Under the

evidence here, the board determined the actual value of the property upon which the certificates of purchase were issued and exacted the payment of this amount from the purchaser. The apportionment and distribution of the amount so realized from the sale among the various funds was a ministerial act, and if the apportionment was erroneous, upon proof thereof it may be corrected.

We have examined defendant's other contentions and find them without merit.

The judgment is affirmed.

Mr. Chief Justice Burke and Mr. Justice Stone concur.