No. 21090.

EURA V. JONES, EXECUTOR, ETC. *v.* ESTATE OF
OLIVE J. LAMBOURN, ETC., ET AL.
(411 P.2d 11)

Decided February 14, 1966.

ELIAS J. CANDELL, for plaintiff in error.

MARTIN I. STEINBERG, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE PRINGLE.

THE plaintiff in error Eura V. Jones, executor of the estate of Olive J. Lambourn, deceased, filed objections in the County Court of Denver (now the Probate Court) to a final report of defendant in error Andrew Wysowatcky, the conservator of the estate of Olive J. Lambourn, and sought to surcharge the conservator for alleged negligence in administering the estate of Mrs. Lambourn. The trial court entered judgment overruling the objections to the report, and the executor now seeks reversal of that judgment. The parties here will be referred to by name, or in their respective capacities as executor, or conservator.

On February 11, 1958, Olive J. Lambourn was adjudicated a mental incompetent, and was committed to the Colorado State Hospital in Pueblo. On the same day, and at the request of the county court, the public administrator, Andrew Wysowatcky, filed a petition for letters of conservatorship and was appointed conservator of Mrs. Lambourn's estate.

The estate, aside from a small amount of cash and household goods of little value, consisted of real estate used by Mrs. Lambourn as a residence, valued at $2,500 and securities valued at a little over $2,100.

The house was found to be in such a substandard condition that it was unfit for any purpose of human habitation. Furthermore, it was found that renovating the house would not have been practical nor profitable to the estate.

Wysowatcky requested the State Hospital to furnish him information concerning the condition of Mrs. Lambourn, and in reply he received a letter from Dr. F. H. Zimmerman, Superintendent of the Colorado State Hospital, advising him of her condition. The letter stated that Mrs. Lambourn, who was eighty-six years old, was mentally confused and disoriented; that her condition was considered irreversible, and that it was not anticipated that she would ever regain her normal mental capacity.

Upon the basis that the house was no longer fit for human habitation, and upon Dr. Zimmerman's prognosis, Wysowatcky determined that the interests of his ward's estate would be served best by disposing of the real estate. He therefore petitioned the court under C.R.S. '53, 152-10-14 for specific performance of an option contract to convey the property. The option contract had been entered into by Mrs. Lambourn approximately one year before her adjudication. The agreement gave one Wesley Kemp the first right and option to purchase the property for $3,000, (which was $500 more than the appraised value) in the event that it were offered for sale within five years from the date of the option.

The court granted the petition and the property was sold pursuant to the option agreement. The proceeds from the sale of the house and the securities were applied to the debts and expenses of the estate and to the monthly maintenance of Mrs. Lambourn at the State Hospital.

Mrs. Lambourn died at the Hospital in February, 1962. Her last will named Jones as the sole beneficiary and executor of her estate.

Wysowatcky filed his final report with the court and requested Jones, as executor, to approve it. Thereafter, plaintiff filed a petition for leave to file objections to the final report. Leave was granted and the objections were heard but denied.

The executor presents the following assignments of error for our determination: (1) The conservator wrongfully disposed of the real estate, failed to preserve the residence of a mental incompetent for ultimate transmission to her or to her heirs or devisees, and was therefore guilty of negligence in the performance of his duties. (2) It was error for the trial court to refuse to disqualify itself and also to refuse to grant a jury trial on the issues made by the objections to the report. (3) The purported sale is void since the statutory proce-

dures regarding sale of property of a mental incompetent were not followed.

■ The gist of plaintiff's argument with respect to his first point is that, barring the sale of the residence, Mrs. Lambourn was eligible for Old Age Pension assistance payments since the value of her assets, excluding the value of her home did not exceed $1,000. The pension would have been adequate to pay her monthly maintenance at the Hospital. The house would then have been preserved for the ultimate transmission to Mrs. Lambourn upon her recovery or to her heirs or devisees upon her decease. Plaintiff contends that the sale foreclosed this result and constituted waste. We do not agree.

Plaintiff's argument is without merit on several grounds. Taking them in their logical order, we first find that plaintiff has confused the duties owed by a conservator with those owed by an administrator or executor.

■■ It is the duty of an *administrator* to preserve the property of an estate for the ultimate transmission to the heirs or beneficiaries of the deceased. *Huling v. Fedderson,* 105 Colo. 475, 99 P.2d 194. However, it was the duty of Wysowatcky, as *conservator,* to manage the estate for the sole benefit of his ward, without looking to the interests of those who, upon the ward's demise, may have rights of succession. *In Re Guardianship of Hilton's Estate,* 72 Wyo. 389, 265 P.2d 747.

Having defined the true duties owed by a conservator, we find, for the reasons discussed herein, no impropriety in Wysowatcky's decision to sell the residence and the probate court's approval thereof.

Even if the residence had not been sold, Mrs. Lambourn was not eligible for the Old Age Pension at the time the property was sold. One of the requirements for the Old Age Pension is that the value of the applicant's assets does not exceed $1,000. Excluded from the $1,000 computation, among other items which are not

in issue here, is the value of the applicant's residence and the land contiguous thereto. However, under certain circumstances, the home may lose its exempt status and the value thereof will be included in the $1,000 computation mentioned above. 4 *Colorado State Department of Public Welfare Staff Manual* § 4208, enacted pursuant to C.R.S. '53, 101-1-2, and admitted into evidence as objector's exhibit A, basically provides that as long as a house does not become non-exempt property by being rented, a recipient is eligible for assistance payments where he is receiving necessary care which he cannot receive in his home, *if* he intends to reoccupy the home should his health permit.

Here, Wysowatcky was faced with the knowledge that his ward, who was eighty-six, was suffering from an irreversible mental collapse and that she would never again be able to care for herself. Under these circumstances, Wysowatcky could not represent to the Department of Welfare that Mrs. Lambourn "intends to reoccupy the house should her health permit."

Such being the case, the residence lost its exempt status and Wysowatcky could not qualify his ward for the pension since the value of her now non-exempt home alone exceeded the $1,000 maximum by $1,500.

In the final analysis, the decision to take advantage of the option contract was the correct one in light of Wysowatcky's duty to act for the sole interest and benefit of his ward. The trial court found that the property was in such a substandard condition that it could no longer be used by Mrs. Lambourn even if we could assume that she would have been released from the State Hospital at some future time. Furthermore, the same substandard condition precluded any possibility that the residence could have been converted to a productive use by its rental. Finally, leaving the house vacant would have invited the ravages of vandalism, thus leaving the conservator liable to a possible surcharge. However, instead of this waste, the sale allowed

the estate to receive $500 more than the appraised value of the property. It further allowed Mrs. Lambourn to be self-supporting and to pay the cost of her care at the institution. When her assets were reduced to $1,000 she then became entitled to and did receive her Old Age Pension payments until her demise at the Hospital.

■ In light of the circumstances in this case, the trial court's findings that Wysowatcky's decision to sell the house was proper is certainly supported by the record.

■ Included in the executor's second argument is the complaint that the court failed to grant a request that the matter be tried by another judge so that the court would not sit in judgment on the acts of its own public administrator. Our investigation of the record discloses that plaintiff did not comply with Rule 97, R.C.P. Colo. which provides in part that:

"Upon motion a judge shall be disqualified in an action if he is interested or prejudiced, * * *. Such motion shall be supported by affidavit and thereupon all other proceedings in the case shall be suspended until a ruling is made thereon. * * *"

This Court will not entertain objections which were not properly preserved in the proceedings below. Formal citation of authority for this proposition is hardly necessary.

■■ With respect to the executor's complaint that his request for a jury trial was denied, we point out that our State Constitution does not require a jury trial in civil cases or in probate proceedings. *Stratton v. Rice,* 66 Colo. 407, 181 Pac. 529. The right to a jury trial in such cases or proceedings is present only when set forth by statute, or rule of court. We have no statute or rule of court in this state which requires a trial by jury in a proceeding to determine objections to a final report of a conservator.

■ In his third assignment of error, plaintiff contends that the option contract was not one for which

specific performance could be granted. He argues further that if it were necessary to sell the residence, it should have been sold to the highest bidder pursuant to C.R.S. '53, 152-13-6. Absent compliance with this statute, he contends that the probate court had no jurisdiction and the purported sale is void. We do not agree.

The option contract with Wesley Kemp was agreed to by Mrs. Lambourn before her adjudication. Once it had been decided to sell the property, Kemp had the first right to purchase the property for $3,000. Since Kemp elected to exercise his option, the property could be sold to no one else. Under these circumstances, C.R.S. '53, 152-10-14 controlled the sale of the property. This statute establishes the procedure for the performance of an existing contract for the conveyance of real estate by the personal representative of a decedent or mental incompetent and sets forth how specific performance thereof may be obtained. The court may order the specific performance of the contract upon compliance by the representative with the procedure set forth in the pertinent sections of the statute. Since Wysowatcky satisfied all of the requirements of C.R.S. '53, 152-10-14, the court properly granted the petition for specific performance of the option contract.

The judgment is affirmed.

MR. JUSTICE DAY and MR. JUSTICE SCHAUER concur.