**RTV, L.L.C., a Colorado limited liability company, Plaintiff–Appellee,**

**v.**

**GRANDOTE INTERNATIONAL LTD. LIABILITY CO., a Colorado limited liability company, Paul D. Harrison, and Dwight A. Harrison, Defendants–Appellants.**

**No. 95CA1286.**

Colorado Court of Appeals,
Div. II.

May 2, 1996.*

Certiorari Denied May 19, 1997.

---

* Prior Opinion Announced February 22, 1996, *WITHDRAWN.* Appellant's Petition for Rehearing *DENIED.* Appellee's Petition for Rehearing *GRANTED.*

Harry L. Simon, P.C., Harry L. Simon, Denver, Senn, Lewis, Visciano & Strahle, P.C., Mark A. Senn, Fredric J. Lewis, Laura B. Redstone, Denver, for Plaintiff–Appellee.

Gerald D. Sjaastad, Colorado Springs, for Defendants–Appellants.

Opinion by Judge CRISWELL.

Plaintiff, RTV, L.L.C., commenced this forcible entry and detainer action to obtain a judgment and order of possession with respect to numerous parcels of land, the title to all of which were derived from a series of county treasurer's deeds. Defendants, Grandote International Ltd. Liability Co., Paul D. Harrison, and Dwight Harrison, former owners of interests in the various parcels, appeal from the judgment and order of possession with respect to only four of the parcels, asserting that the trial court denied them their right to trial by jury and that the evidence demonstrated, as a matter of law, that the treasurer's deeds to the four parcels gave plaintiffs no proper title to those parcels. We disagree and affirm.

## I.

■ First, contrary to defendants' assertion, we conclude that they had no right to have a jury pass upon any of the factual issues presented here.

■ In Colorado, there is no constitutional right to a trial by jury in a civil case; such right as may exist derives from either statute or court rule. *Jones v. Estate of Lambourn,* 159 Colo. 246, 411 P.2d 11 (1966); *Husar v. Larimer County Court,* 629 P.2d 1104 (Colo. App.1981).

C.R.C.P. 38(a) describes the types of "actions" in which a party is entitled to a jury, and these include those "for the recovery of specific real ... property...." This phrase describes the common law action of ejectment, which was an action at law. That action has been supplanted by the modern action for forcible entry and detainer. Hence, because it is the original complaint that establishes the character of the action for purposes of the right to jury trial, *Miller v. District Court,* 154 Colo. 125, 388 P.2d 763 (1964); *Miller v. Carnation Co.,* 33 Colo.App. 62, 516 P.2d 661 (1973), such right normally exists in such an action. *Baumgartner v. Schey,* 143 Colo. 373, 353 P.2d 375 (1960).

■ However, if there are no disputed facts with respect to the plaintiff's forcible entry and detainer claim, and the factual issues to be tried relate only to equitable defenses asserted by the defendant, no jury is to be impaneled to resolve such issues. *Stone v. Lerner,* 118 Colo. 455, 195 P.2d 964 (1948). It is the nature of the relief sought or defense asserted, not the nature of the factual issues presented, which determines whether the right exists. *Federal Deposit Insurance Corp. v. Mars,* 821 P.2d 826 (Colo. App.1991).

Here, plaintiff's complaint was simple and straightforward—it alleged that plaintiff had been issued treasurer's deeds to the various parcels and was, therefore, entitled to possession of them.

In response, defendants asserted three affirmative defenses that are before us—that the deeds relied upon by plaintiff were improperly acquired because plaintiff held an interest in the parcels when the deeds were issued; that two of the deeds were void because they were not issued in compliance with the pertinent statute; and that the deeds were void because they were based upon previous improper separate assessments of the land and the improvements.

There was no issue raised with respect to the fact that treasurer's deeds had issued to plaintiff and that its claim to possession was based on those deeds. The burden was upon defendants, therefore, to demonstrate that those deeds were void. *Bennett v. Shotwell,* 118 Colo. 206, 194 P.2d 335 (1948).

Defendants' claim of voidness, if sustained, would have resulted in an equitable decree of the deeds' invalidity. And, to the extent that there were any factual controversies between the parties, those controversies related to defendant's equitable defenses, not to plaintiff's forcible entry and detainer claim.

We conclude, therefore, that the trial court properly refused to impanel a jury to resolve any such issues. *See Stone v. Lerner, supra.*

## II.

■ Defendants next assert that the record here shows that plaintiff was the nominee of one or more entities which, at the time of the issuance of the treasurer's deeds in question, held an equitable interest in the parcels in question. Hence, they argue that plaintiff could not obtain title to those parcels through those deeds, thereby defeating defendants' rights as the owner and co-mortgagees of the parcels. We disagree.

Defendants' argument is based upon the so-called "common fund" theory, which was adopted and applied by our supreme court in such cases as *Miller v. First National Bank,* 164 Colo. 449, 435 P.2d 899 (1968) and *Barlow v. Hitzler,* 40 Colo. 109, 90 P. 90 (1907). *See also Buchanan v. Hansen,* 820 P.2d 908 (Utah 1991); *Vulcan Materials Co. v. Bee Construction Co.,* 101 Ill.App.3d 30, 56 Ill. Dec. 465, 427 N.E.2d 797 (1981), *rev'd on other grounds,* 96 Ill.2d 159, 70 Ill.Dec. 465, 449 N.E.2d 812 (1983). *See generally* Annotation, *Right of mortgagee or other lienor to acquire and hold tax title in his own right as against persons owning other interests in or liens upon property,* 140 A.L.R. 294 (1942).

■ The common fund doctrine recognizes that the real property in which various persons have an interest, either of an ownership or security nature, represents a common source from which all such interests must be satisfied. It also recognizes that each of the interest holders normally has a right to pay the *ad valorem* taxes imposed upon the property.

■ Further, given the relationship of each interest holder to the *res* that protects that interest, there arises, at least with respect to the payment of such taxes, a quasi-fiduciary relationship among the various interest holders themselves. Hence, such an interest holder, having a right to pay *ad valorem* taxes, may not act as a stranger to the property and attempt to acquire a tax title that would divest the other interest holders of their interests. In such circumstances, any payment to acquire a tax title will be considered to be either a payment of the taxes or a redemption of the property from a previous tax sale, rather than a payment for the acquisition of a new title.

■ Fundamental to the recognition of this quasi-fiduciary obligation, however, is the existence of a *right* to pay *ad valorem* taxes at the time that the payment is made. Indeed, in *Miller v. First National Bank, supra,* 164 Colo. at 457–458, 435 P.2d at 902–903, it was said:

> [I]t is necessary to point out also that the fiduciary relationship rule is an equitable concept which *premises* its validity upon a *right* to pay taxes co-related with an *accompanying duty* to pay taxes; and that this duty is breached when the fiduciary does not pay the taxes or does not redeem but instead buys a tax certificate and is issued a treasurer's deed. (emphasis supplied)

Here, even if we assume that plaintiff and its assignor, Wahatoyas, L.L.C., were both nominees for their individual common principal, the undisputed facts show that the various tax certificates which supported the later treasurer's deeds were paid for and assigned to Wahatoyas in July 1994. At that time, however, neither plaintiff nor any of the parties associated with it had any interest of either a legal or equitable nature in any of the parcels described in those certificates or in any lien encumbering the property. At the time these tax certificates were acquired, therefore, none of these parties had any right to pay the unpaid taxes or to redeem the property from any prior tax sale.

It is true that, more than three months later, in October 1994, Wahatoyas assigned these tax certificates to plaintiff and simultaneously entered into a written agreement with a third party to acquire a promissory note secured by a deed of trust upon the property. Later still, a treasurer's deed was issued to plaintiff for each of the four parcels.

■ In our view, however, these later events cannot impose, retroactively, a fiduciary *obligation* to pay taxes at a time when there existed no *right* to pay them. We conclude, rather, that, under the common

fund theory adopted in *Miller v. First National Bank, supra,* the date that the payment is made is the determinative one. If there exists, at that time, a right to pay taxes, any payment made will be considered to have been made for that purpose. Conversely, if no such right to pay or to redeem then exists, no fiduciary relationship exists, and no later event will retroactively alter the effect of a payment made to acquire a tax certificate or deed.

In reaching this conclusion here, we rely upon the fact that the record contains no evidence of any agreement among any of the interested parties to acquire any interest in any of the parcels or in any lien upon them prior to October 1994. And, the trial court here found, as a fact, that there was no collusion among any of the parties.

## III.

Defendants also argue that some of the four treasurer's deeds issued to plaintiff were legally insufficient to convey proper title to it because (1) while some of the deeds were supported by tax certificates issued for taxes exceeding $10,000, there was no compliance with § 39–11–122, C.R.S. (1994 Repl. Vol. 16B), and (2) in the case of each of the four parcels, the assessments for improvements existing upon each was mistakenly, but separately, assessed against a parcel not the subject of this litigation, so that the resulting taxes upon these improvements were not included within the tax certificates upon which plaintiff's treasurer's deeds are based. We reject both of these arguments.

## A.

Section 39–11–122 provides that, if a county possesses tax certificates for prior years, the county may sell the same pursuant to a resolution of the board of county commissioners. However, the statute also provides that, if such sale is of real estate upon which, at that time, more than $10,000 in *ad valorem* taxes are due, such sale must first be approved by the state tax administrator after notice of such sale is published in a newspaper published in the county (or publicly posted if no such newspaper exists). Because the tax certificates on two of the parcels here

were delivered to plaintiff at a time when more than $10,000 was owed upon each parcel and it is undisputed that no notice was given and no approval by the state tax administrator was obtained, defendants assert that such sales were invalid, thereby making the later two treasurer's deeds issued on these parcels void. We disagree.

A separate statute, § 39–11–120(4), C.R.S. (1994 Repl.Vol. 16B), provides that, if a tax certificate is issued to a county, the county treasurer may sell that certificate either "upon payment to the treasurer of the amount for which said tax lien was bid in by the county" *or* "for such sum as the board of county commissioners ... at any regular or special meeting may decide and authorize by order duly entered...."

On its face, this latter statute authorizes the county treasurer to sell any tax certificate for full value without requiring any action by the county commissioners. It is only if the amount to be received is less than such full amount that an order by the commissioners is necessary. And, it is only if such action by the county commissioners is necessary that § 39–11–122, the statute relied upon by plaintiff, becomes applicable; unless such action is required by § 39–11–120, the procedure established by § 39–11–122 does not apply.

The foregoing interpretation of these two statutes was the one adopted by our supreme court in *Knutson v. Dickson,* 105 Colo. 42, 44–45, 94 P.2d 691, 692 (1939), in which it stated:

> There is no need for any action by the county commissioners when the full amount of the taxes due is tendered, consequently, no inconsistency or repugnancy exists between [§ 39–11–120 and § 39–11–122] pertaining to the disposition of certificates held by the county when the taxes thereon are tendered in full ....

We recognize that, after the issuance of the *Knutson* opinion, the General Assembly amended what is now § 39–11–122 by adding the requirement for state approval and publication. Colo. Sess. Laws 1941, ch. 193 at 650. This amendment, however, merely add-

ed procedural requirements in those instances in which action by the county commissioners is necessary, *i.e.,* when the sale is to be for less than the full amount of taxes due. That amendment does not require action by the commissioners in those instances in which § 39–11–120 does not require such action.

Hence, the later amendment had no effect upon the *Knutson* analysis, which still contains a description of the proper applicability of these two statutes.

We conclude, therefore, that, because each of the sales here was for the full amount of the taxes then due, the requirements of § 39–11–122 were inapplicable to the transactions, and the failure to comply with that statute's requirements did not affect the validity of the two later treasurer's deeds.

### B.

■ We also reject defendants' assertion that, with respect to each of the four parcels, plaintiff did not pay taxes attributable to both the land and improvements on each parcel.

Defendants' assertions upon this point are grounded upon a unique set of factual circumstances.

The four parcels here collectively constitute a golf course that abuts a residentially-platted area. The treasurer's deed to each parcel was based upon a tax certificate issued for unpaid taxes for 1989. It is agreed that, at the time of the evaluation of the parcels for assessment purposes for that year, each parcel had substantial improvements upon it.

Section 39–5–105, C.R.S. (1994 Repl.Vol. 16B) requires that, with specific exceptions not relevant here: "[I]mprovements shall be appraised and valued separately from land . . . ." This was done here.

However, for reasons that are not apparent from the record, all of the improvements on each of the four parcels were "mis-located" by the county assessor. Improvements on all four parcels were thought to be located on a separate, 14–acre parcel; thus, a separate tax schedule was established for that parcel, and a separate notice of evaluation for all of the improvements was sent to the purported owner of that parcel.

It is not clear from the record where this 14–acre parcel is located with reference to the four relevant parcels or, indeed, whether any such parcel exists. Some evidence suggests that these 14 acres did not constitute a privately owned, separate parcel, but constituted, rather, the platted streets within the residential area. We shall assume for purposes of our analysis here, however, that such a separate 14–acre parcel did, in fact, exist.

The mis-location of the improvements by the assessor resulted in the notice of evaluation for each of the four parcels reflecting a value only for the land with no improvements. Consequently, the amount of the taxes assessed against each parcel was substantially less than it would have been had the improvements been properly allocated to the parcel upon which they were actually situated. Likewise, this assessment mistake meant that the amount of taxes recorded against each parcel as of the time that the property was stricken off to the county, as well as the amount shown to be due for redemption purposes, was attributable solely to the value of the land; no taxes were assessed based upon the value of any improvements.

There is some dispute in the evidence as to when this mistake was discovered. The undisputed testimony from the deputy county treasurer, however, is that the tax records in her office had not been corrected as of July 1994, when Wahatoyas had each of the four pertinent tax certificates assigned to it. Hence, the amount paid by Wahatoyas at that time represented only the taxes for tax year 1989 and later years attributable to the land; such amount included no taxes attributable to any improvements.

Nevertheless, the testimony is also undisputed that, after the assignment of the four tax certificates and before any treasurer's deed had issued, the assessment mistake was discovered. Consequently, the tax schedules and other records, both for each of the four parcels and for the 14–acre parcel, were corrected so as to "remove" the improvements from the 14–acre parcel and to "relocate"

them correctly on each of the other four parcels. As a result, plaintiff paid an additional sum for each parcel, representing all taxes due on the improvements on that parcel, before a treasurer's deed for that parcel was issued.

Later, after the mistake had been discovered and the records corrected, the county assigned the tax certificate for the 14–acre parcel to another party, not joined in this litigation, upon the payment of a sum representing taxes attributable only to the land comprising that parcel.

Relying upon *French v. Golston,* 105 Colo. 578, 100 P.2d 581 (1940), defendants argue that, because the original tax sale in 1990 (for 1989 taxes) did not result in a single sale of both land and improvements, the assessment mistake could not later be corrected. We disagree.

The *Golston* decision is inapplicable to the factual circumstances disclosed here. In that case, a parcel of land and the improvements thereon were separately assessed and were made the subject of separate tax certificates. At no time was there ever an effort made to correct this mistake (if such it was considered to be). Rather, the purchaser of the tax certificate representing the taxes on the land only acquired a treasurer's deed based upon this certificate. However, the supreme court refused to quiet title to the parcel, based on this deed, because the purchaser had failed to prove that he had also acquired the tax certificate for, and, thus, had paid all subsequent taxes upon the improvements.

Here, in contrast, the undisputed testimony was that the mistake was discovered, the records were corrected, and plaintiff paid all taxes attributable both to the land and to the improvements on each of the four parcels before any treasurer's deed issued.

Section 39–5–125(2), C.R.S. (1994 Repl.Vol. 16B) specifically authorizes the assessor or the treasurer to correct any errors or omissions in the assessment roll "at any time before the tax warrant is delivered to the treasurer or ... at any time after the warrant" has been delivered.

This statute is unambiguous and authorizes such a correction at any time. *Chew*

*v. Board of Assessment Appeals,* 673 P.2d 1028 (Colo.App.1983). Indeed, in the absence of any objection as to the amount of the assessment, such correction can be made even after the time has run for making such an objection. *Modular Communities, Inc. v. McKnight,* 191 Colo. 101, 550 P.2d 866 (1976). Hence, because defendants here have raised no objection as to the amount of the assessments for the improvements, we conclude that the treasurer had the authority to correct the tax records even after the tax certificates had been assigned to the county.

In reaching this conclusion, we recognize that, had the certificate for the 14–acre tract been assigned to a third party before the assessment mistake was discovered and corrected, an entirely different issue, not raised by the facts here, would have been presented.

Judgment and order affirmed.

HUME and JONES, JJ., concur.