25CA0744 Jarrett v Besecker 04-09-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0744
Yuma County District Court No. 24CV30001
Honorable Robert C. James, Judge

---

M. Sue Jarrett,

Plaintiff-Appellant,

and

Seth Sholes and Masyl Sholes,

Third-Party Defendants-Appellants,

v.

Gloria R. Besecker, in her capacity as trustee of the Thomas L. Schelly and
Gilda Gene Schelly Family Trust, and Michael T. Peabody, in his capacity as
trustee of the Barbara J. Peabody Trust dated July 14, 1998,

Defendants-Appellees.

---

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE YUN
Grove and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 9, 2026

---

Robinson & Henry, P.C., Stephen M. Whitmore, Alexander C. Lowe, Nicholas J.
Catalano, Denver, Colorado, for Plaintiff-Appellant and Third-Party Defendants-
Appellants

Witwer, Oldenburg, Barry & Groom, LLP, John J. Barry, Francis L. Kailey, Greeley, Colorado, for Defendants-Appellees

¶ 1    In this landlord-tenant dispute over a residential property, M. Sue Jarrett, the plaintiff, and Seth and Masyl Sholes, the third-party defendants (collectively, the tenants), appeal the district court's judgment entered after it denied their request for a jury trial on the forcible entry and detainer (FED) claims asserted by the defendants, Gloria R. Besecker and Michael T. Peabody (the landlords).[1]  Additionally, both the tenants and the landlords request their appellate attorney fees and costs.  We affirm the judgment, award appellate attorney fees and costs to the landlords, and remand the case to the district court to determine the amount of fees and costs to be awarded.

## I.    Background

¶ 2    The underlying dispute involves two properties: a residential property (the house) and an agricultural property that surrounds it. The district court entered judgments regarding both properties, but only its ruling on the house was certified as final under C.R.C.P. 54(b).  Accordingly, we recount only the facts relevant to the house.

---

[1] Besecker and Peabody were substituted for two deceased parties to the action, Gilda Gene Schelly and Barbara J. Peabody.

¶ 3 Beginning in 2021, the landlords leased the house to the tenants. The parties subsequently entered into successive one-year written leases for the house. The most recent lease specified a term ending on January 31, 2024. Prior to that date, on October 10, 2023, the landlords notified the tenants of their intent not to renew.

¶ 4 In January 2024, Jarrett, one of the tenants, filed a complaint against the landlords, accompanied by a jury demand and payment of the requisite jury fee. *See* C.R.C.P. 38(a)-(b). She asserted that the landlords were "require[d] . . . to come to the table each year" to renegotiate the lease and, further, were bound by their oral "assurances of longevity."[2] Jarrett brought seven claims for relief: (1) breach of lease; (2) breach of the covenant of good faith and fair dealing; (3) unjust enrichment; (4) promissory estoppel; (5) implied contract; (6) discrimination; and (7) preliminary "injunction/estoppel." For each claim except promissory estoppel, she requested damages "in an amount to be proven at trial." She also requested that the court require "specific performance on the

---

[2] Jarrett asserted that the landlords failed to renegotiate the terms in violation of the lease. Specifically, the agricultural lease stated, "Rent and terms to be negotiated yearly," and Jarrett argued that this provision applied equally to the lease for the house.

terms of the contract," issue an injunction, and "estop[] [the landlords] from reletting the premises . . . without first offering the same terms and conditions to [her]."

¶ 5     In response, the landlords filed an answer and asserted a counterclaim for FED against Jarrett for remaining in the house past the lease's expiration. They also brought a third-party complaint for FED against the remaining tenants, the Sholeses, for the same reason. The landlords did not request a jury trial in their combined answer, counterclaim, and third-party complaint or pay the requisite jury fee. After being served with the third-party complaint, the tenants filed a single pleading that combined Jarrett's reply to the counterclaim and the Sholeses' answer to the third-party complaint. This reply and answer likewise did not include a jury demand, and the Sholeses paid no jury fee.

¶ 6     Initially, the district court resolved to try all issues together during a three-day jury trial. The court found that the landlords' FED claim was "primarily a legal argument" and, further, that Jarrett's claims were "intertwined" with the landlords' FED claims. In a subsequent order, the court reiterated its view of the FED

claims as legal in nature and confirmed its intent to address all issues in a single jury trial.

¶ 7    One month before the scheduled jury trial, however, the district court ordered bifurcation. Specifically, the court stayed the issues arising from Jarrett's complaint and ordered a bench trial to proceed on the landlords' FED claims alone. Two days later, the tenants moved for reconsideration, which the court summarily denied.

¶ 8    The landlords' FED claims proceeded to a one-day bench trial. On that same day, the supreme court announced its *Mercy Housing* opinion holding that, "so long as landlords or tenants timely demand a jury trial and pay the requisite jury fee in an action for the recovery of real property, they are entitled to a jury trial on all issues of fact" in FED actions. *See Mercy Hous. Mgmt. Grp. Inc. v. Bermudez*, 2024 CO 68W, ¶¶ 34-35 (unpublished opinion), *withdrawn mem.*, 559 P.3d 1163 (Colo. Dec. 16, 2024). Based on this opinion, the tenants moved for a jury trial two days after the bench trial concluded.

¶ 9    The supreme court later withdrew its *Mercy Housing* opinion "[b]ecause [it] rested on a[n] [inaccurate] factual premise" about

4

personal service. *Mercy Hous. Mgmt. Grp. Inc. v. Bermudez*, 559 P.3d 1163, 1163 (Colo. Dec. 16, 2024) (mem.) (withdrawal order); *see* § 13-40-115(2), C.R.S. 2025. After its withdrawal, the district court summarily denied the tenants' motion for a jury trial.

¶ 10 The district court then issued a written order on both FED claims tried to the court — one concerning the agricultural property and one concerning the house. The court found that the tenants were unlawfully detaining both properties and granted possession of each to the landlords. Although the tenants requested certification of the entire order under C.R.C.P. 54(b), the district court certified only its ruling on the house as a final judgment.[3]

¶ 11 The tenants now appeal.

## II. Civil Jury Trial Right

¶ 12 The tenants argue that the court erred by denying them a jury trial because FED claims are legal actions that carry a right to jury determination of factual issues. The landlords counter that the right to a jury trial is governed by the "basic thrust" doctrine, under which a party is entitled to a jury trial only if the basic thrust of the

---

[3] None of the parties challenge the validity of the C.R.C.P. 54(b) certification.

plaintiff's complaint is legal in nature, and that the basic thrust of the complaint here was equitable. In reply, the tenants maintain that "only the FED claims should be considered in determining the nature of the action under the basic thrust doctrine" because the bench trial "only concerned the bifurcated FED claims." We agree with the landlords.

### A.    Standard of Review and Applicable Law

¶ 13    We review de novo a party's right to a jury trial in a civil action. *M.G. Dyess, Inc. v. MarkWest Liberty Midstream & Res., L.L.C.*, 2022 COA 108, ¶ 13.

¶ 14    "[T]hree elements must be met before a civil case may be tried to a jury: (1) a party must timely file a demand; (2) that party must pay the requisite jury fee; and (3) either the constitution or a statute must authorize a jury trial for the type of action filed." *Mason v. Farm Credit of S. Colo., ACA*, 2018 CO 46, ¶ 9.

¶ 15    Regarding the third element, there is no constitutional right to a civil jury trial in Colorado. *RTV, L.L.C. v. Grandote Int'l Ltd. Liab. Co.*, 937 P.2d 768, 770 (Colo. App. 1996). Rather, any such right must derive from either a statute or the court rules. *Husar v. Larimer Cnty. Ct.*, 629 P.2d 1104, 1104 (Colo. App. 1981). As

6

pertinent here, C.R.C.P. 38(a) states, "all issues of fact shall be tried by a jury" in actions where trial is provided by constitution or statute, "including actions for the recovery of specific real or personal property, with or without damages." Colorado courts have interpreted this language as encompassing FED actions. *See RTV, L.L.C.*, 937 P.2d at 770.

¶ 16     However, our supreme court has articulated "two rules" to determine whether the third element is met. *Mason*, ¶ 10. First, C.R.C.P. 38 "provide[s] for a jury trial only in proceedings that are legal in nature, not equitable." *Mason*, ¶ 10. Second, only the claims in a plaintiff's complaint dictate whether an action is legal or equitable. *Id.* at ¶ 11. When a plaintiff's complaint includes both legal and equitable claims, the district court must apply the "basic thrust" doctrine, looking "to the overall character of the action to determine whether it is fundamentally legal or equitable." *Id.*

¶ 17     The preferred method for determining whether an action is legal or equitable is to "examine the nature of the remedy sought: 'Actions seeking monetary damages are [generally] legal, while actions seeking to invoke the coercive power of the court are . . . [generally] equitable.'" *Id.* at ¶ 27 (citation omitted). If a plaintiff

7

seeks both damages — typically a legal remedy — and specific performance — an equitable remedy — the court may evaluate the essence of the action by considering whether the legal remedy is sought only in the alternative. *Setchell v. Dellacroce*, 454 P.2d 804, 807 (Colo. 1969).

¶ 18  In sum, a party is entitled to a jury trial if a timely jury demand is made, the requisite jury fee is paid, and the character of the action, as set out in the plaintiff's complaint, is predominantly legal in nature.

## B.    Analysis

¶ 19  Initially, we reject the landlords' contention that the tenants waived their right to contest the basic thrust doctrine argument by failing to address it in their opening brief. None of the district court's orders expressly relied on the doctrine, even though the landlords raised it below. The tenants were not required to anticipate alternative arguments that the landlords might introduce in their answer brief. We accordingly consider the tenants' arguments on the doctrine as raised in their reply brief. *See Snider v. Town of Platteville*, 227 P. 548, 548 (Colo. 1924) (considering a new argument in appellant's reply brief because it

responded to appellee's answer brief); *People v. Rogers*, 2014 COA 110, ¶¶ 3, 23, *rev'd on other grounds sub nom.*, *Teague v. People*, 2017 CO 66 (allowing the appellant to respond to a legal theory raised below but not relied on by the district court).

¶ 20    Nevertheless, the tenants cannot prevail on the merits of their appeal. Despite Jarrett's requests for monetary damages, "the overall character of the action" is fundamentally equitable. *Mason*, ¶ 11. To begin with, three of the seven claims in the complaint — promissory estoppel, unjust enrichment, and "injunction/estoppel" — are equitable in nature. *See Snow Basin, Ltd. v. Boettcher & Co.*, 805 P.2d 1151, 1154 (Colo. App. 1990) ("[P]romissory estoppel is an equitable doctrine," not subject to a jury trial.); *Lewis v. Lewis*, 189 P.3d 1134, 1141 (Colo. 2008) (explaining that an unjust enrichment claim provides "an equitable remedy and does not depend on any contract, oral or written"); *Rinker v. Colina-Lee*, 2019 COA 45, ¶ 80 ("An injunction is an extraordinary and discretionary equitable remedy . . . intended to prevent future harm." (citation omitted)); *Wheat Ridge Urb. Renewal Auth. v. Cornerstone Grp. XXII, L.L.C.*, 176 P.3d 737, 741 (Colo.

9

2007) (noting that "equitable estoppel . . . is more precisely characterized as an equitable doctrine").

¶ 21    More importantly, Jarrett's complaint seeks primarily equitable relief, with monetary damages largely sought in the alternative. *See Setchell*, 454 P.2d at 807 (concluding there was no jury right when the plaintiff wanted the defendants to "specifically perform their agreement to renegotiate and refinance the premises" and, alternatively, damages); *Motz v. Jammaron*, 676 P.2d 1211, 1214 (Colo. App. 1983) (concluding there was no jury right when the plaintiff sought damages and specific performance because the "essential relief" was "judicial enforcement of what lessees claim to be a binding lease agreement"). For example, Jarrett requests the court to (1) "estop[] [the landlords] from reletting the premises . . . without first offering the same terms and conditions to [her]"; and (2) require "specific performance of the terms of the contract," which she appears to interpret as a requirement to renegotiate and relet the premises. If the court granted these equitable remedies, her request for damages would become unnecessary. She would no longer need the damages that she requested "to put [her] in the position she would have been in had the contract been performed."

Nor would she persist in requesting damages for improvements to the land that she claims to have made "in reliance on the longevity of the lease." Thus, the tenants were not entitled to a jury trial because the requested equitable remedies were not only primary but also "more substantive and more numerous" than the legal remedies. *Mason*, ¶ 32; *Setchell*, 454 P.2d at 807.

¶ 22 In their reply brief, the tenants do not deny that Jarrett's complaint is equitable in character; instead, they contend that the complaint is irrelevant because only the FED claims were tried in the bifurcated bench trial. Even so, although the landlords' FED counterclaim/third-party claim is legal in nature, *RTV, L.L.C.*, 937 P.2d at 770, Colorado courts "have . . . consistently exclude[d] claims brought by defendants from our jury trial right analysis" under the basic thrust doctrine. *Mason*, ¶ 20; *see also Miller v. Dist. Ct.*, 388 P.2d 763, 765-66 (Colo. 1964) (ignoring claims in defendant's counterclaim); *Tiger Placers Co. v. Fisher*, 54 P.2d 891, 892 (Colo. 1936) (same, but counterclaim was titled "cross-complaint"); *Neikirk v. Boulder Nat'l Bank*, 127 P. 137, 139 (Colo. 1912) (same). "In each of these cases," our supreme court "emphasized that only claims brought by plaintiffs affect the status

11

of a case as legal or equitable for purposes of the civil jury trial right." *Mason*, ¶ 20.

¶ 23    Moreover, the tenants do not cite — nor can we find — any Colorado case that countenances a different outcome when claims are bifurcated.  But even if we were to treat the counterclaim and third-party complaint as a separate action for purposes of the jury trial right, neither the landlords nor the tenants requested a jury trial or paid a jury fee when they filed their combined (1) answer, counterclaim, and third-party complaint; and (2) reply and answer. *See* C.R.C.P. 38(e) ("The failure of a party to file and serve a demand for trial by jury and simultaneously pay the requisite jury fee as required by this Rule constitutes a waiver of that party's right to trial by jury.").  Accordingly, they would not be entitled to a jury trial even if the complaint could be separated from the counterclaim and third-party complaint.

¶ 24    Finally, on these facts, we are unpersuaded by the tenants' argument that the basic thrust doctrine "needlessly elevates form over substance" to impair an important right.  Undoubtedly, the right to a jury trial in FED actions is important. *See Pernell v. Southall Realty*, 416 U.S. 363, 385 (1974) (emphasizing the

importance of juries in landlord-tenant disputes to ensure justice before eviction). But the "'plaintiff is the master of [the] complaint' and, thus, has the right to choose which claims he or she seeks to pursue in which court." *Ditirro v. Sando*, 2022 COA 94, ¶ 43 (citations omitted). Here, Jarrett controlled the character of her complaint and, necessarily, the jury right.

¶ 25    For all these reasons, we conclude that the district court did not err in denying a jury trial on the FED claims.

### III.    Appellate Attorney Fees and Costs

¶ 26    Both the tenants and the landlords request appellate attorney fees and costs. Section 13-40-123, C.R.S. 2025, provides that "[t]he prevailing party in any [FED] action . . . is entitled to recover damages, reasonable attorney fees, and costs of suit." However, a "residential landlord or tenant who is a prevailing party shall not be entitled to recover reasonable attorney fees unless the residential rental agreement between the parties contains a provision for either party to obtain attorney fees." *Id.*

¶ 27    Here, the residential lease contains such a fee-shifting provision. Specifically, it states:

> Should any litigation be commenced between the parties to this lease concerning said premises, this lease, or the rights and duties of either relation thereto, the party, Lessor or Lessee, prevailing in such litigation shall be entitled to . . . a reasonable sum as and for attorney's fees to be determined by the court in such litigation . . . .

Given our conclusion, the landlords have prevailed in this appeal and are entitled to recover their reasonable attorney fees incurred on appeal. *See, e.g.*, *In re Estate of Gattis*, 2013 COA 145, ¶ 45 (awarding appellate attorney fees pursuant to fee-shifting provision in underlying agreement). Because the district court is better situated to determine the amount of reasonable fees, we exercise our discretion under C.A.R. 39.1 and remand the case to the district court for that determination.

¶ 28    Further, the landlords are entitled to recover appellate costs under C.A.R. 39(a)(2), which provides, "if a [district court's] judgment is affirmed, costs are taxed against the appellant" — the tenants. The landlords may pursue those costs in the district court by following the procedure set forth in C.A.R. 39(c).

## IV. Disposition

¶ 29    The judgment is affirmed, and the case is remanded to the district court under C.A.R. 39.1 and C.A.R. 39(c) for a determination of reasonable attorney fees and costs incurred during this appeal.

JUDGE GROVE and JUDGE SCHOCK concur.